# EXHIBIT A

**Christie Jo Berkseth-Rojas DDS**

**3455 4th  Ave S**
**Minneapolis, MN 55408**

**Policy Number**
**D006449-03**

**Agency Customer Number**

**Please Mail To:**

**05824**
**USI**
**8000 Norman Center Drive Suite 400**
**Bloomington MN, 55437**

# "PLEASE CHECK DOCUMENT FOR ACCURACY"

**"State Administrator is responsible for communicating available ERP options, if applicable."**

**Insured's copy**

Document # :  1636394     10/04/2019 04:51:18 PM     Completed By:  **JSUAREZ**                    10/04/2019 04:51:18 PM

# YOUR RISK MANAGEMENT SERVICES

### PROFESSIONAL LIABILITY

• Medical malpractice hotline answered by dentists, attorneys and claims adjusters
**(844) 747-8543**

• Dentist continuing education via live and online course offerings

• Risk management educational articles **https://www.protectorplan.com/risk-management-articles/**

• Practice management and dental procedure consent form library **https://www.protectorplan.com/forms/**

• Risk management manual

### EMPLOYMENT PRACTICES LIABILITY

• EPLI hotline answered by Human Resources professionals and employment & labor attorneys
**(855) 472-6277**

• eLearning webinars on trending employment issues

• Dedicated website containing valuable HR support resources **http://www.hr-aa.com/pppwelcome**

• Policy and procedure form library

### PROPERTY

• PPP Property Check-Up

• Property risk management articles

• HSB annual boiler inspections

• Temporary Dental Services experts for catastrophic losses



**www.protectorplan.com**

*A nominal fee has been included to cover most of these valuable risk management services.

PROFESSIONAL PROTECTOR PLAN®
FOR DENTISTS



**PROFESSIONAL LIABILITY COVERAGE PART**
**DENTISTS/ORAL SURGEONS CLAIMS-MADE**

### DECLARATIONS - MINNESOTA

**NOTICE: YOUR PROFESSIONAL LIABILITY INSURANCE IS WRITTEN ON A "CLAIMS MADE" BASIS AND PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE THE RESULTS OF DENTAL INCIDENTS OCCURRING SUBSEQUENT TO THE PRIOR ACTS DATE STATED BELOW AND WHICH ARE FIRST MADE AGAINST YOU WHILE THIS INSURANCE IS IN FORCE. PLEASE DISCUSS THIS WITH YOUR AGENT.**

| Policy Number | From | Policy Period | To | Coverage Is Provided By |
|---|---|---|---|---|
| **D006449-03** | **12/06/2019** | | **12/06/2020** | **Aspen American Insurance Company** |

| Named Insured and Address | National Administrator |
|---|---|
| **Christie Jo Berkseth-Rojas DDS**<br><br>**3455 4th  Ave S**<br>**Minneapolis, MN 55408** | **B & B Protector Plans Inc.**<br>**P.O. Box 173569**<br>**Tampa, FL 33672-3569**<br><br>State Administrator<br><br>**USI**<br>**8000 Norman Center Drive, Suite 400**<br>**Bloomington MN - 55437** |

| Limits of Liability | | Coverage |
|---|---|---|
| $1,000,000 | Each Claim | Professional Liability |
| $3,000,000 | Aggregate | |
| Included | | Personal Injury Liability & Advertising Injury Liability |
| $10,000 | Each Person | First Aid |
| $25,000 | Each Claim | Employment Practices Liability Coverage Defense |
| $25,000 | Aggregate | |

PRIOR ACTS DATE          **see schedule**

Minnesota Policy Level Location Surcharge : $8.9
Minnesota Fire Safety Surcharge - 2007 : $3.32

| | |
|---|---|
| **$12.22** | **Total Policy Taxes and Surcharges** |

| | |
|---|---|
| **$1,404.22** | Policy Premium |

Printed Endorsements Attached At Policy Issuance - See Attached Schedule of Endorsements

Where required by law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____
Secretary

_____
President

Countersigned By:

_____
Authorized Representative

Issue
Date:     10/04/2019 04:51:18 PM      Renewal




# PROFESSIONAL PROTECTOR PLAN®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

## DECLARATIONS - MINNESOTA

| Policy Number | From | Policy Period | To | Coverage Is Provided By |
|---|---|---|---|---|
| **D006449-03** | **12/06/2019** | | **12/06/2020** | **Aspen American Insurance Company** |

| Named Insured and Address | National Administrator |
|---|---|
| **Christie Jo Berkseth-Rojas DDS**<br><br>**3455 4th  Ave S**<br>**Minneapolis, MN 55408** | **B & B Protector Plans Inc.**<br>**P.O. Box 173569**<br>**Tampa, FL 33672-3569**<br><br>State Administrator<br><br>**USI**<br>**8000 Norman Center Drive, Suite 400**<br>**Bloomington MN - 55437** |

| Limits of Liability | | Coverage |
|---|---|---|
| $1,000,000 | Each Occurrence | General Liability - Occurrence |
| $3,000,000 | Aggregate | |
| Included | | Personal Injury Liability & Advertising Injury Liability - Occurrence |
| $1,000,000 | Aggregate | Products Hazard/Completed Operations Hazard - Occurrence |
| $10,000 | Each Person | Medical Payments - Occurrence |
| $10,000 | Each Occurrence | |
| $1,000,000 | Per Occurrence | Non-Owned or Hired Automobile Liability - Occurrence |
| $50,000 | Per Suit | Medical Waste Legal Expense Reimbursement - Occurrence |
| $50,000 | Aggregate | |
| $25,000 | Each Claim | ERISA Fiduciary Liability - Claims-Made Prior Acts Date 09/01/2018 |
| $25,000 | Aggregate | |

| INCLUDED | Policy Premium |
|---|---|

Printed Endorsements Attached At Policy Issuance - See Attached Schedule of Endorsements

ASPDTGL033MN 0817

Where required by law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____
Secretary

_____
President

Countersigned By:

_____
Authorized Representative

Issue
Date:   10/04/2019 04:51:18 PM      Renewal




# PROFESSIONAL PROTECTOR PLAN®

## COMMERCIAL PROPERTY COVERAGE PART

### DECLARATIONS - MINNESOTA

| Policy Number | From | Policy Period | To | Coverage Is Provided By |
|---|---|---|---|---|
| **D006449-03** | **12/06/2019** | | **12/06/2020** | **Aspen American Insurance Company** |

| Named Insured and Address | National Administrator |
|---|---|
| **Christie Jo Berkseth-Rojas DDS**<br><br>**3455 4th  Ave S**<br>**Minneapolis, MN 55408** | **B & B Protector Plans Inc.**<br>**P.O. Box 173569**<br>**Tampa, FL 33672-3569** |
| | State Administrator |
| | **USI**<br>**8000 Norman Center Drive, Suite 400**<br>**Bloomington MN - 55437** |

| Insured Location Address | | State | Zip Code |
|---|---|---|---|
| 3455 4th Ave South | **Minneapolis** | **MN** | **55408** |

| Limits of Insurance | | Coverage |
|---|---|---|
| $0 | Limit of Insurance | Building |
| 0%     (Per Quarter) | % Inflation Guard Increase | |
| $229,424 | Limit of Insurance | Blanket Dental Practice Personal Property |
| .3%     (Per Quarter) | % Inflation Guard Increase | |
| $1000 | Deductible Amount | Building & Blanket Dental Practice Personal Property |
| $1,000 | Limit Per Day | Valued Practice Income |
| 32.5 | No. of Days | |
| 12 Months | Limit of Time | Actual Loss Sustained Practice Income |
| $0 | Limit of Insurance | Rents |
| $35,000 | I. A. - Money/Securities | Employee Dishonesty (Applies Collectively To All Locations) |
| $25,000 | I. B. - Welfare & Pension Plans | |
| $50,000 | Basic Coverage | Dentist's Electronic Equipment |

| INCLUDED | Policy Premium |
|---|---|

Printed Endorsements Attached At Policy Issuance - See Attached Schedule of Endorsements

Where required by law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____
Secretary

_____
President

Countersigned By:

_____
Authorized Representative

Issue
Date: 10/04/2019 04:51:18 PM    Renewal

# SCHEDULE OF NAMED INSUREDS

**NAMED INSURED:** Christie Jo Berkseth-Rojas DDS

**POLICY NUMBER:** D006449-03

**POLICY EFFECTIVE DATE:** 12/06/2019     **POLICY EXPIRATION DATE:** 12/06/2020

**POLICY CHANGE DATE:**

**FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUE:**

| Named Insured | Class:1D | PL Prior Acts Date | EPL Prior Acts Date |
|---|---|---|---|
| Christie Jo Berkseth-Rojas DDS | 80211 | 07/20/2011 | 12/06/2017 |

      Risk Management Credit Applied
      Part-time Credit Applied

# SCHEDULE OF INSURED LOCATIONS

**NAMED INSURED:** Christie Jo Berkseth-Rojas DDS

**POLICY NUMBER:** D006449-03

**POLICY EFFECTIVE DATE:** 12/06/2019      **POLICY EXPIRATION DATE:** 12/06/2020

**POLICY CHANGE DATE:**

**FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUE:**

**PRIMARY INSURED LOCATION**

3455 4th Ave South
Minneapolis, MN 55408

# SCHEDULE OF APPLICABLE FORMS

**NAMED INSURED:** Christie Jo Berkseth-Rojas DDS

**POLICY NUMBER:** D006449-03

**FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUE:**

 ASPDTCO018MN (Ed. 08/17) MINNESOTA AMENDATORY ENDORSEMENT COMMON POLICY
CONDITIONS

ASPCO004 (Ed. 04/05) SCHEDULE OF INSURED LOCATIONS

ASPCO005 (Ed. 01/06) SCHEDULE OF NAMED INSUREDS

ASPCO1143 (Ed. 11/16) SCHEDULE OF APPLICABLE FORMS

ASPDTCO001 (Ed. 01/17) COMMON POLICY CONDITIONS

ASPDTCO003 (Ed. 01/17) ECONOMIC AND TRADE SANCTIONS CONDITION

ASPDTCO004 (Ed. 01/17) TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US

ASPDTCO009 (Ed. 01/17) DISCLOSURE OF PREMIUM PURSUANT TO TERRORISM RISK INSURANCE
ACT

ASPDTCO010MN (Ed. 08/17) MINNESOTA POLICYHOLDER NOTICE

ASPDTCO012MN (Ed. 05/17) STATE CANCELLATION PROVISIONS - MINNESOTA

ASPDTCO014 (Ed. 01/17) ADDITION OF NAMED ENTITY INSURED

ASPDTCO020 (Ed. 01/17) DEFENDANT'S REIMBURSEMENT COVERAGE

ASPDTCO027 (Ed. 01/17) CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

ASPDTCO039 (Ed. 06/18) AUTOMATIC TERMINATION ENDORSEMENT

ASPDTGL001 (Ed. 01/17) GENERAL LIABILITY COVERAGE PART (Occurrence)

ASPDTGL002 (Ed. 01/17) DISTRIBUTION OR RECORDING OF MATERIAL OR INFORMATION IN
VIOLATION OF LAW EXCLUSION ENDORSEMENT

ASPDTGL012 (Ed. 03/17) ERISA PUNITIVE DAMAGES EXCLUSION

ASPDTGL013 (Ed. 01/17) FUNGI / MOLD / MILDEW / YEAST / MICROBE EXCLUSION AND WATER
DAMAGE LIMITATION

ASPDTGL014 (Ed. 01/17) AMENDATORY ENDORSEMENT

ASPDTGL016 (Ed. 01/17) EXCLUSION - ASBESTOS

ASPDTGL018MN (Ed. 05/17) MINNESOTA AMENDATORY ENDORSEMENT GENERAL LIABILITY
COVERAGE PART AND MEDICAL WASTE LEGAL REIMBURSEMENT COVERAGE

ASPDTGL024 (Ed. 01/17) MEDICAL WASTE LEGAL EXPENSE REIMBURSEMENT COVERAGE

ASPDTGL025 (Ed. 01/17) MEDICAL PAYMENTS COVERAGE PART

ASPDTGL026 (Ed. 01/17) NON-OWNED OR HIRED AUTOMOBILE LIABILITY COVERAGE PART

ASPDTGL027 (Ed. 01/17) BLANKET ADDITIONAL INSURED ENDORSEMENT

ASPDTGL032 (Ed. 03/17) EXCLUSION SILICIA

ASPDTGL033MN (Ed. 08/17) MINNESOTA CGL DECLARATIONS PAGE

ASPDTGL034 (Ed. 01/17) ERISA FIDUCIARY and EMPLOYEE BENEFITS LIABILITY COVERAGE PART
(Claims-Made)

ASPDTGL037MN (Ed. 05/17) MINNESOTA AMENDATORY ENDORSEMENT ERISA FIDUCIARY LIABILITY
COVERAGE PART

ASPDTPL001 (Ed. 01/19) PROFESSIONAL LIABILITY COVERAGE PART  DENTISTS ORAL SURGEONS
CLAIMS-MADE

ASPDTPL011 (Ed. 01/17) RESTRICTIVE ENDORSEMENT OTHER EMPLOYMENT

 ASPDTPL017 (Ed. 01/17) SPECIAL EXTRA EXPENSE COVERAGE ENDORSEMENT (Claims-Made)

ASPDTPL032 (Ed. 01/17) DENTISTS OR ORAL AND MAXILLOFACIAL SURGEONS (Claims-Made)

ASPDTPL033 (Ed. 01/17) HIPAA PROCEEDINGS ENDORSEMENT

ASPDTPL034 (Ed. 01/17) PROTECTED HEALTH INFORMATION/PRIVACY ENDORSEMENT

ASPDTPL043 (Ed. 01/19) INSURED DENTISTS STATUS CHANGE - PROFESSIONAL LIABILITY

ASPDTPL048MN (Ed. 05/19) MINNESOTA - EMPLOYMENT PRACTICES LIABILITY DEFENSE COVERAGE AMENDATORY ENDORSEMENT

ASPDTPL062MN (Ed. 08/17) PROFESSIONAL LIABILITY COVERAGE PART  DENTISTS ORAL SURGEONS DECLARATIONS (CLAIMS-MADE) - MINNESOTA

ASPDTPL063MN (Ed. 05/17) MINNESOTA AMENDATORY ENDORSEMENT CLAIMS-MADE PROFESSIONAL LIABILITY COVERAGE PART

ASPDTPL066MN (Ed. 05/17) AMENDATORY ENDORSEMENT - MINNESOTA

ASPDTPL086 (Ed. 06/18) BILLING DISPUTES COVERAGE SUPPLEMENTAL ENDORSEMENT

ASPDTPL094 (Ed. 09/17) PROFESSIONAL LIABILITY CLAIMS-MADE AMENDATORY ENDORSEMENT

ASPDTPL107 (Ed. 08/18) PRIVACY AND NETWORK SECURITY ENDORSEMENT

ASPDTPR001 (Ed. 02/19) BUILDING, BLANKET DENTAL PRACTICE PERSONAL PROPERTY AND INCOME COVERAGE PART

ASPDTPR002 (Ed. 02/19) EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT

ASPDTPR004MN (Ed. 08/17) BUILDING, BLANKET DENTAL PRACTICE PERSONAL PROPERTY AND INCOME DECLARATIONS - MINNESOTA

ASPDTPR007 (Ed. 01/17) FLOOD AND OTHER WATER DAMAGE COVERAGE ENDORSEMENT

ASPDTPR017 (Ed. 01/17) COMPUTER VIRUS AND SYSTEM PENETRATION EXCLUSION

ASPDTPR018 (Ed. 01/17) CONCURRENT CAUSATION, EARTH MOVEMENT AND WATER EXCLUSION

ASPDTPR022 (Ed. 01/17) FUNGI, WET ROT, DRY ROT AND MICROBE EXCLUSION

ASPDTPR025 (Ed. 01/17) ORDINANCE OR LAW COVERAGE

ASPDTPR040 (Ed. 01/17) EMPLOYEE DISHONESTY COVERAGE FORM

ASPDTPR041MN (Ed. 05/17) MINNESOTA STATE AMENDATORY ENDORSEMENT (PROPERTY)

ASPDTPR043 (Ed. 01/17) SPOILAGE COVERAGE ENDORSEMENT

ASPDTPR052 (Ed. 01/17) WELFARE AND PENSION PLAN ERISA COMPLIANCE ENDORSEMENT

ASPDTPR073 (Ed. 02/19) AMEND DENTIST'S ELECTRONIC EQUIPMENT COVERAGE (For Use With FLOOD OR OTHER WATER DAMAGE COVERAGE ENDORSEMENT, EARTHQUAKE ENDORSEMENT, AND DENTIST'S EQUIPMENT BREAKDOWN COVERAGE)

PPP Claims Contacts - Package with EPL

Professional Corporation

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ADDITION OF NAMED ENTITY INSURED

This endorsement modifies insurance provided under the following:

**Professional Liability Coverage part dentists/oral surgeons**
**General Liability Coverage Part**
**Building, Blanket Dental Practice Personal property & income coverage part**

In consideration of the premium paid, the policy is modified as follows:

Named Entity Insured:

**Rojas Family Dental**

1.  The definition of **"You"** or **"Your"** in each of the above Coverage Parts is amended to include the following:

    **"You"** or **"Your"** also means the entity listed above. However, solely with respect to the Professional Liability Coverage Part, such entity is insured only with respect to its liability arising out of an **insured dentist's** rendering or failure to render **professional services**

2.  Solely for the purposes of the coverage afforded to the entity named above, Section **III. LIMITS OF LIABILITY,** Paragraph **E.** of the Professional Liability Coverage Part is deleted in its entirety and is replaced as follows:

    **E.** It is understood that the limits of liability available to such entity named above shall apply on a shared basis with all insured dentists who are members of the above named additional insured entity.

3.  In no event will the addition of these entities serve to increase the limits applicable to each Coverage Part.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## RESTRICTIVE ENDORSEMENT - OTHER EMPLOYMENT

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE PART DENTISTS/ORAL SURGEONS**

In consideration of the premium paid, the policy is modified as follows:

We will not defend or pay for any **injury** or **damage** arising from **your** activity (or failure to act) in your capacity as designated below:

Insured Name:  Christie Jo Berkseth-Rojas

Capacity:  Community Dental Care, Saint Paul
828 Hawthorne Ave E
Saint Paul, MN 55106

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

ASPDTPL011 0117

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### BUILDING, BLANKET DENTAL PRACTICE PERSONAL PROPERTY AND INCOME COVERAGE PART

In consideration of the premium paid, the Policy is modified as follows:

### Earthquake or Volcanic Coverage Schedule

| Location | Coverage |
|---|---|
| 3455 4th Ave South, Minneapolis, MN, 55408 | $50,000.00 |

For those locations listed in the **Earthquake or Volcanic Coverage Schedule** above, the following applies:

**A.** The following are added to the **"Covered Causes of Loss"** definition in Section **IV. DEFINITIONS:**

- Earthquake
- Volcanic Eruption, meaning the eruption, explosion or effusion of a volcano.

**B.** All Earthquake shocks or Volcanic Eruptions that occur within any 168 hour period will constitute a single Earthquake or Volcanic Eruption. The expiration of this policy will not reduce the 168 hour period.

**C.** With respect to the coverage provided by this endorsement, we will not pay for loss or **damage** caused by or resulting from:

**1.** Fire, explosion (other than volcanic explosion), landslide, mine subsidence, tidal wave, flood, mudslide or mudflow, even if attributable to an Earthquake or Volcanic Eruption.

**2.** Any Earthquake or Volcanic Eruption that begins before the inception of this insurance.

But, if this policy replaces earthquake insurance that excludes loss or **damage** that occurs after the expiration of the policy we will pay for loss or **damage** by Earthquake or Volcanic Eruption that occurs on or after the inception of this insurance, if the series of Earthquake shocks or Volcanic Eruptions began within 168 hours prior to the inception of this insurance.

**D.** Section **II. EXCLUSIONS**, Paragraph **A.2.** Earth Movement and Paragraph **A.3.** Volcanic Eruption does not apply.

**E.** Section **III. LIMITS OF INSURANCE**, Paragraph **C.** Deductible is replaced by the following for Earthquake and Volcanic Eruption:

**1.** We will subtract a sum from the amount of loss or **damage** in any one occurrence.

   **a.** The sum we subtract from each separate item will be a percentage of its value. The applicable percentage is 5%.

   **b.** This Deductible applies separately to the following:

      **(1)** Each **building** or structure;

**(2)**   The contents of each **building** or structure; and

**(3)**   Personal property in the open.

**Example:**

When:

| | |
|---|---|
| The value of the property is | $100,000 |
| The Earthquake Deductible is | 5% |
| The amount of loss is | $ 20,000 |

Step **(a)**: $100,000 x 5% = $5,000

Step **(b)**: $20,000   $5,000 = $15,000

The most we will pay is $15,000. The remaining $5,000 is not covered because of the Deductible.

2.   No deductible applies to the following:

    **a.**   **Practice Income;** and

    **b.**   **Extra Expense.**

**F.**   The Limits of Insurance that apply to coverage provided under this endorsement are stated below:

We will pay up to the Limit scheduled for the respective Location shown in the **Earthquake or Volcanic Coverage Schedule** for loss to **your building, blanket dental practice personal property**, extra expense and **practice income** due to damage caused by or resulting from any one occurrence of Earthquake or Volcanic Eruption.

However, we will pay no more than $50,000.00 for the total of all loss or damage that is caused by Earthquake or Volcanic Eruption in a 12 month period (starting with the beginning of the present annual policy period) even if there is more than one Earthquake or Volcanic Eruption event during that period of time. Thus, if the first Earthquake or Volcanic Eruption does not exhaust this $50,000.00 aggregate Limit of Insurance, then the balance of that Limit is available for a subsequent Earthquake or Volcanic Eruption.

If a single Earthquake or Volcanic Eruption begins during one annual policy period and ends during the following annual policy period, any Limit of Insurance applicable to the following annual policy period will not apply to such Earthquake or Volcanic Eruption.

All other provisions of this Policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLOOD OR OTHER WATER DAMAGE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUILDING, BLANKET DENTAL PRACTICE PERSONAL PROPERTY AND INCOME COVERAGE PART**

In consideration of the premium paid, the policy is modified as follows:

**A.** Solely for those locations set forth in the **FLOOD OR OTHER WATER DAMAGE COVERAGE SCHEDULE OF LOCATIONS** below and only for the Covered Property and Limit of Insurance scheduled below:

   **1.** Section **II. EXCLUSIONS,** Paragraph **A.7.** Water, is deleted in its entirety;

   **2.** Section **IV. DEFINITIONS,** Paragraph **A**. Collapse in the "**Covered Causes of Loss**" definition is amended by the addition of the following:

      **g.   flood or other water damage.**

### FLOOD OR OTHER WATER DAMAGE COVERAGE SCHEDULE OF LOCATIONS

| Location | Covered Property | Limit of Insurance |
|---|---|---|
| 3455 4th Ave South, Minneapolis, MN, 55408 | All covered property | $50,000 |
|  |  |  |
|  |  |  |

**B.  Deductible**

The Deductible, if any, in this Coverage Part is replaced by the following with respect to **flood** or **other water damage:**

   **1.** Except for the locations listed in the **SPECIAL FLOOD OR OTHER WATER DAMAGE DEDUCTIBLE SCHEDULE**, we will not pay for loss or **damage** in any one occurrence until the amount of loss or **damage** exceeds $5,000. We will then pay the amount of loss or **damage** in excess of the Deductible, up to the Limit of Insurance shown in the **FLOOD OR OTHER WATER DAMAGE COVERAGE SCHEDULE OF LOCATIONS.**

   **2.** When Covered Property at a location listed in the **SPECIAL FLOOD OR OTHER WATER DAMAGE DEDUCTIBLE SCHEDULE** is lost or **damaged,** we will not pay for loss or **damage** in any one occurrence until the amount of loss or **damage** exceeds the Deductible Amount indicated in the Schedule. We will then pay the amount of the loss or **damage** in excess of the Deductible Amount up to the Limit of Insurance shown in the **FLOOD OR OTHER WATER DAMAGE COVERAGE SCHEDULE OF LOCATIONS.**

### SPECIAL FLOOD OR OTHER WATER DAMAGE DEDUCTIBLE SCHEDULE

| Location | Covered Property | Deductible Amount |
|---|---|---|
| 3455 4th Ave South, Minneapolis, MN, 55408 | All covered property | $5,000 |
|  |  |  |
|  |  |  |

**C. Special Flood or Other Water Damage Limits of Insurance**

When the **covered cause of loss** is **flood** or **other water damage:**

**1.** Subject to Paragraph **2.** below, the most we will pay for loss or **damage** in any one occurrence at any one location indicated in the **FLOOD OR OTHER WATER DAMAGE COVERAGE SCHEDULE OF LOCATIONS** will be the Limit of Insurance shown in such schedule.

**2.** The most we will pay for loss or **damage** in this policy period is $50,000.

**D. Supplemental Conditions**

Coverage provided under this endorsement does not apply to Covered Property in transit.

**E. Section I. COVERAGE AGREEMENTS,** Paragraph **B.1.**, Covered Related Expenses, Back Up of Sewer or Drain does not apply at any location where this endorsement applies.

**F. Definitions**

**1.** **"Flood"** means a general and temporary condition of partial or complete inundation of normally dry land areas, whether caused by natural occurrences, acts or omissions of man or any other cause or combination of causes.

All flooding in a continuous or protracted event will constitute a single flood.

**2.** **"Other Water Damage"** means:

**a.** Mudslide or mudflow;

**b.** Water under the ground surface pressing on, or flowing or seeping through:

**(1)** Foundations, walls, floors or paved surfaces;

**(2)** Basements, whether paved or not; or

**(3)** Doors, windows or other openings.

All other provisions of this Policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIVACY AND NETWORK SECURITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE PART DENTISTS/ORAL SURGEONS

In consideration of the premium charged, the policy is modified as follows:

The terms named insured, you and your as used in this endorsement have the same definition as in this policy.

We, our, and us means Aspen American Insurance Company.

THIS ENDORSEMENT IS WRITTEN ON A CLAIMS MADE AND REPORTED BASIS. THE COVERAGE PROVIDED IS LIMITED TO ONLY THOSE CLAIMS FOR WRONGFUL ACTS TAKING PLACE ON OR AFTER THE RETROACTIVE DATE STATED IN THIS ENDORSEMENT AND FOR WHICH CLAIMS ARE FIRST MADE AGAINST YOU DURING THE POLICY PERIOD. INCIDENT RESPONSE EXPENSE COVERAGE APPLIES ONLY TO EXPENSE INCURRED IN CONNECTION WITH A PRIVACY AND NETWORK SECURITY INCIDENT THAT FIRST TAKES PLACE DURING THE POLICY PERIOD.  THE LIMITS OF LIABILITY PROVIDED BY THIS ENDORSEMENT ARE IN ADDITION TO, AND DO NOT ERODE, THE LIMITS OF LIABILITY UNDER YOUR POLICY. DEFENSE EXPENSES ARE PAID WITHIN THE LIMITS OF LIABILITY APPLICABLE TO THIS ENDORSEMENT.

Subject to all terms, conditions, definitions, exclusions and other provisions of this endorsement, we agree as follows:

I.   COVERAGE AGREEMENTS

**A.  Liability and Restoration Coverage**

We will pay, on behalf of you, loss from claims first made during the policy period, and reported to us in accordance with the terms of this endorsement, for any wrongful act which first takes place on or after the retroactive date.

**B.  Incident Response Expense Coverage**

We will pay, on behalf of you, expense incurred in connection with a privacy and network security incident that first takes place on or after the retroactive date but prior to the end of the policy period, and that is reported to us in accordance with the terms of this endorsement.

C.  Payment Card Coverage

We will reimburse you for fines, penalties or assessments imposed against you for failure to comply with any requirement of the Payment Card Industry Data Security Standards ("pci-dss fines") due to a privacy and network security incident that first takes place on or after the retroactive date but prior to the end of the policy period.

**D.  Business Income Loss Coverage**

We will pay, on behalf of you, business income loss due to a privacy and network security incident which first takes place on or after the retroactive date but prior to the end of the policy period.

## II.   DEFINITIONS

"**Affected Population**" means one or more individuals whose **personal information** was or may have been impacted as a result of a **privacy and network security incident**.

"**Bodily Injury**" means any and all physical injury, sickness, pain, suffering, disease or death of any person.

"**Breach Notification Law**" means any governmental law, statute, regulation, rule or guidance that requires notice to an **affected population** or governmental or regulatory authority.

"**Business Income Loss**" means the net profit, before taxes, that **you** would have earned during a period of disruption to your **network** due to a **privacy and network security incident**.

"**Call Center Services**" means establishing and operating a call center in response to a **privacy and network security incident**.

"**Claim**" means any:

1. civil proceeding in a court of law or equity commenced by the filing of a complaint, motion for judgment or similar proceeding, against **you**;

2. written demand for monetary or non-monetary relief, written demand for arbitration or written request to toll or waive a statute of limitations received by **you**;

3. administrative or regulatory proceeding, inquiry, or investigation against **you**, or any regulatory response to incident reporting received by or on behalf of **you**;

4. an **extortion** event, or any other interruption to **your** ability to conduct standard business operations; or

5. deletion, destruction or manipulation of **your** data assets.

"**Data Asset Restoration**" means the actual, necessary and reasonable amounts paid to a third party service provider, incurred with our prior written approval, to restore, or attempt to restore, **your** data assets which are compromised as a result of a **privacy and network security incident**.

"**Data Forensics**" means investigation and analysis of **your network** to determine the source and breadth of a **privacy and network security incident**.

"**Expense**" means the actual, necessary and reasonable amounts paid by **you** to third party service providers for:

1. **Data forensics;** provided, however that this coverage is subject to a sub-limit of liability of $150,000;

2. **Public relations;** provided, however that this coverage is subject to a sub-limit of liability of $150,000;

Such amounts are part of and not in addition to the Limit of Liability set forth in Section IV.A.2. of this endorsement.

3. **Notification;**

4. **Fraud monitoring and resolution services;**

5. **Call center services;** or

6. **Incident response consultation;** provided, however that this coverage is subject to a sub-limit of liability of $150,000. Such amount is part of and not in addition to the Limit of Liability set forth in Section IV.A.2. of this endorsement.

"**Extended Network**" means all desktops, laptops, servers, peripheral devices, mobile devices or other nodes not under **your** direct operational control.

"**Extortion**" means actual or threatened malicious activity directed at **your network** or data, where payment or other action from **you** is demanded by a third party.

"**Fraud Monitoring and Resolution Services**" means credit monitoring, identity monitoring, and identity restoration services provided to an **affected population**.

"**Incident Response Consultation**" means services provided by an external law firm to:

1.  determine the applicability of and facilitate compliance with **breach notification laws**;

2.  draft content for **notification** or reports to governmental or regulatory authorities; and

3.  coordinate service providers approved by us to provide **data forensics**, **public relations**, **data asset restoration, service restoration, notification, fraud monitoring and resolution services,** and **call center ser**

"**Loss**" means the following amounts for which **you** become legally obligated to pay in connection with a **claim**:

1.  all actual, necessary and reasonable legal fees and legal expenses in the investigation, defense, or appeal of a **claim;**

2.  monetary settlements, judgements or awards, including pre-judgement and post judgement interest;

3.  amounts paid to a consumer redress fund;

4.  fines and penalties levied by a governmental or regulatory authority due to a **privacy and network security incident;** provided, however that this coverage is subject to a sub-limit of liability of $150,000, which amount is part of and not in addition to the Limit of Liability set forth in Section IV.A.2. of this endorsement;

5.  **Data asset restoration** costs, regardless of any legal obligation to pay; provided, however that this coverage is subject to a sub-limit of liability of $150,000, which amount is part of and not in addition to the Limit of Liability set forth in Section IV.A.2. of this endorsement;

6.  **Service restoration** costs, regardless of any legal obligation to pay; provided, however that this coverage is subject to a sub-limit of liability of $150,000, which amount is part of and not in addition to the Limit of Liability set forth in Section IV.A.2. of this endorsement; or

7.  payment amounts, including the actual, reasonable and necessary costs to execute such payment, of an **Extortion** demand whether in digital currency or traditional currency, regardless of any legal obligation to pay; provided, however that this coverage is subject to a sub-limit of liability of $150,000, which amount is part of and not in addition to the Limit of Liability set forth in Section IV.A.2. of this endorsement.

**Loss** does not include any:

8.  fines or penalties (except for those described in paragraph 4. above), assessments, sanctions or taxes;

9.  punitive, exemplary, or multiple damages;

10. future or undue profits, royalties, restitution, costs of licensing, disgorgement of profits, or unjust enrichment;

11. costs to comply with orders granting injunctive or non-monetary relief, including specific performance or any agreement to provide such relief;

12. return or offset of fees, royalties, commissions, profits or charges for goods or services already provided;

13. liquidated damages, contractually agreed penalties or similar remedies, but only to the extent such amounts exceed the amount for which **you** would have been legally liable in absence of such agreement;

14. salaries, wages, fees, overhead, or any other employee benefits incurred by you;

15. Extortion payment made without the prior written consent of us; or

16. matters which are uninsurable under applicable law.

"Media Incident" means any of the following, if resulting from your website, web-based advertising or social media activity:

1. defamation, slander, libel, trade libel, or product disparagement;

2. invasion of privacy, intrusion upon seclusion or misappropriation of likeness, picture, name, or voice;

3. intellectual property infringement;

4. plagiarism, piracy or misappropriation of ideas; or

5. domain name infringement or improper deep-linking or framing.

"Network" includes all desktops, laptops, servers, peripheral devices, mobile devices or other nodes under your direct operational control, whether owned or leased.

"Network and Information Security Controls" means all controls, whether policy or technology based, in order to prevent intrusions of, or unauthorized access to, the network or extended network, personal information or other data, whether residing thereon or in any other form.

"Notification" means communication to an affected population.

"Personal Information" means:

1. any non-public information that could allow an individual to be uniquely identified;

2. the definition provided in any federal, state, local or foreign privacy protection law or regulation governing the control and use of an individual's confidential or protected information; or

3. any other information associated with an individual that could be used to perpetrate identify theft or fraud.

"Privacy and Network Security Incident" means any of the following:

1. an actual or suspected disclosure of personal information or the violation of a breach notification law;

2. an actual or suspected disclosure of commercial, non-personal information due to a bypass of network and information security controls;

3. an actual or suspected unauthorized access to, or usage of, your network due to a bypass of network and information security controls;

4. an extortion event;

5. an inability of you to provide products and services to customers due to a bypass of network and information security controls; or

6. a transmission of malicious code due to a bypass of network and information security controls.

"Property Damage" means physical damage to or destruction of any real or tangible property, including loss of use.

"Public Relations" means services provided by an external public relations firm, crisis management firm or law firm to minimize the reputational impact on you resulting from a privacy and network security incident; provided, however, that no other expense or element of loss will be construed as public relations services.

"**Related Wrongful Acts**" means **wrongful acts** that are logically or causally connected by any common fact(s), circumstance(s), transaction(s), or event(s).

"**Retroactive Date**" means 12/06/2017.

"**Service Restoration**" means the actual, necessary and reasonable amounts paid to a third party service provider, incurred with our prior written approval, following a **privacy and network security incident**, in order to restore the operational capacity of **your network** to the level immediately preceding such **privacy and network security incident**.

"**Wrongful Act**" means any actual or alleged act, error, misstatement, misleading statement, omission, neglect or breach of duty committed by **you** which leads to a:

1. **privacy and network security incident;** or

2. **media incident.**

## III. EXCLUSIONS

A. This endorsement does not cover any **loss**:

1. for the transfer of, or the failure to transfer, funds, monies or securities;

2. for any derivative suit or any actual or alleged violation of the Employee Retirement Income Security Act of 1974, as amended, the Securities Act of 1933, the Securities Exchange Act of 1934, or any other federal, state or local securities laws or regulations;

3. based upon or arising out of any actual or alleged **bodily injury** or **property damage**;

4. based upon or arising out of any actual or alleged discharge, dispersal, release or escape of toxic chemicals, liquids or gases, waste materials or other contaminants, or pollutants, however caused;

5. based upon or arising out of any suspension or reduction in utilities or telephone communications services not under **your** control;

6. based upon or arising out of declared war by a nation state;

7. based upon or arising out of any actual or alleged infringement or misappropriation of any patent or trade secret;

8. based upon or arising out of any actual or alleged unfair competition, deceptive trade practices, restraint of trade, or antitrust;

9. based upon or arising out of employment practices;

10. based upon or arising out of any actual or alleged unsolicited communications; or

11. based upon or arising out of any actual or alleged **claim** by **you**;

provided however, that Exclusions A.7. through A.11, will not apply to that portion of an otherwise covered **claim** for a **privacy and network security incident**.

B. This endorsement does not cover any **loss** or **expense**:

1. based upon or arising out of any actual or alleged dishonesty, fraud, criminal conduct, malicious or intentional acts or omissions by any of **you,** or willful violation of any statute, rule or law by any of **you,** provided, however, that this exclusion will not apply to actual, necessary and reasonable legal fees and legal expenses until there is an admission or a final, non-appealable adjudication in the underlying proceeding establishing such conduct.

For the purpose of applying this exclusion, the conduct or knowledge of one of you will not be attributed to any other of **you**.

2. based upon or arising out of:

    a. any **claim, wrongful act**, fact, circumstance, transaction or event which has been the subject of any written notice given under any other policy before the effective date of this endorsement;

    b. any prior or pending litigation, regulatory or administrative proceeding or any **claim** of which any of **you** had knowledge or received notice prior to the effective date of this endorsement;

    c. any actual or alleged matter that prior to the effective date of this endorsement any of **you** knew or reasonably should have known could to lead to a **claim** or **expense**;

provided however, if this endorsement is a renewal of a privacy and network security endorsement issued by us to the **named insured** and continuously renewed and maintained in effect, references to the effective date of this endorsement in Exclusions B.2.b. and B.2.c. will be deemed to refer to the effective date of the first such privacy and network security endorsement.

## IV. CONDITIONS

### A. Limits and Retention

1. Our maximum aggregate limit of liability for all Coverage Agreements of this endorsement is $150,000.

2. Our maximum aggregate limit of liability for all **loss** and **expense** covered by this endorsement is $150,000 which amount shall be part of and not in addition to the amount set forth in Paragraph 1. above.

3. Our maximum aggregate limit of liability for all **pci-dss fines** covered by this endorsement is $75,000, which amount shall be part of and not in addition to the amount set forth in Paragraph 1. above.

4. Our maximum aggregate limit of liability for all **business income loss** covered by this endorsement is $100,000, which amount shall be part of and not in addition to the amount set forth in Paragraph 1. above.

5. Our obligation to pay any **loss, expense, pci-dss fines** or **business income loss** is in excess of the applicable retention stated below. In the event that the same or related fact(s), circumstance(s), transaction(s), or event(s) result in coverage under more than one Coverage Agreement, only the highest applicable retention will apply.

6. The retention applicable to Coverage Agreement. I.A. of this endorsement is $1,000 which shall apply to each and every **claim.**

7. The retention applicable to Coverage Agreement I.B. of this endorsement is $1,000 which shall apply to each and every **privacy and network security incident**.

8. The retention applicable to Coverage Agreement. I.C. of this endorsement is $1,000 which shall apply to each and every **privacy and network security incident**.

9. The retention applicable to Coverage Agreement. I.D. of this endorsement is $1,000 which shall apply to each and every **privacy and network security incident**.

### B. Reporting and Notice

1. As a condition precedent to coverage under this endorsement, you must give us written notice of a **claim** or a **privacy and network security incident** as soon as possible after such **claim** or **privacy and network security incident** becomes known to any of **you,** but no later than the end of the policy period.

2. If, during the policy period, **you** become aware of any **wrongful act** which may subsequently give rise to a **claim**, **you** will give us written notice of such **wrongful act** as soon as possible after such **wrongful act** becomes known to **you**, but no later than the end of the policy period. We will treat any subsequently resulting **claim** as if it was first made during the policy period.

3. When a **claim** is made against **you**, and there are multiple **claims** arising from the same **wrongful act** or **related wrongful acts**, all such **claims** will be considered a single **claim** and will be deemed to have been made at the time the first **claim** was made.

**C. Duty to Defend**

We have the right and duty to defend **you** in the investigation, settlement or defense of any **claim**, even if a **claim** is groundless, false or fraudulent. **You** agree not to make any payment, engage in any settlement negotiation, incur any **loss**, admit liability or assume any obligation without the prior written consent of us.

We will have no obligation to pay any **loss** or to continue to defend any **claim** after the limit of liability stated in Section IV.A.2. of this endorsement has been exhausted.

**D. Duty to Cooperate**

**You** must provide us with full assistance and cooperation at all times, including timely and accurate reporting and information about all incidents, **claims**, **loss**, and **expense**.

**E. Other Insurance**

Any coverage provided by this endorsement is excess over and will not contribute to any other valid and collectible insurance, unless such other insurance is specifically written as excess over this policy; provided however, coverage under this endorsement for **expense** will be primary.

**F. Subrogation**

If any payment is made under this endorsement for **loss** or **expense**, and there is the ability to recover against any third party, it is agreed that **you** tender all **your** rights of recovery to us. **You** also agree to assist us in exercising such rights. Any recovery will first be paid to us toward any incurred subrogation expenses, **loss** or **expense**, and any remaining amounts will be paid to **you** for reimbursement of any retention paid.

**G. Cancellation**

We may not cancel this endorsement except for failure to pay premium when due, in which event, we will provide written notice of cancellation to the **named insured**. Such notice will be mailed to the **named insured** at least 10 days prior to the effective cancellation date, and a copy will be sent to the **named insured's** agent of record.

This endorsement may be cancelled by the **named insured** by providing written notice to us stating the effective date of cancellation.

**H. Alternative Dispute Resolution**

If a dispute arises between **you** and us in connection with this endorsement and cannot be resolved through informal negotiation, the parties will attempt to resolve the dispute through mediation before a mutually agreeable mediator. The mediator's expenses and fees will be split equally by the parties. If the dispute has not been resolved upon conclusion of the mediation process, then either party may file suit in any court having jurisdiction over the parties and the subject matter of the dispute or disagreement.

**I. Coverage Territory**

The coverage under this endorsement applies anywhere in the world.

**J.  Incident Response**

**1.  Incident Response**

The third party service providers (each a "Preferred Provider") and their respective services described in this endorsement are pre-approved by us to assist **you** in the event of a **privacy and network security incident**. Preferred Providers are not affiliated with us and are solely responsible for all services.

**2.  Notice of Incident**

As a condition precedent to coverage, **you** must comply with all obligations under this endorsement, including without limitation, providing us notice of any incident in accordance with Section IV.B. of this endorsement.

**3.  Incident Response Consultation Services**

The exclusive Preferred Providers are pre-approved by us to provide **incident response consultation** services in connection with a **privacy and network security incident**.  Any decision to engage the services of a Preferred Provider is solely at **your** discretion.

If **you** do elect to retain the services of a Preferred Provider, **you** agree to execute an engagement letter outlining the services to be provided.  Our liability will only apply to **incident response consultation** services provided by a Preferred Provider.

**4.  Incident Response Services**

**Data Forensics**:

We have a list of Preferred Providers pre-approved to provide **data forensics** to **you** in connection with a **privacy and network security incident**.  Please contact our Claims Department at «LossRun@bbprograms.com» to obtain consultation as to hiring a consultant.  Any decision to engage the services of such Preferred Providers pre-approved to provide **data forensics** is solely at our discretion.

These services include**:**

**a.**  Evaluation and analysis of **your network** to gather and preserve evidence for determining the breadth and source of a **privacy and network security incident**; and

**b.**  Data mining to identify the **affected population**; and

**c.**  Remediation of a **privacy and network security incident** on **your network**.

**Notification**, **Fraud Monitoring and Resolution Services**, and **Call Center Services**:

Preferred Providers are pre-approved by us to provide **notification**, **fraud monitoring and resolution services** and **call center services** on behalf of **you** in connection with a **privacy and network security incident**.  Preferred Provider services include:

**a.**  Management of notification letter printing, mailing (via first class mail) and return mailing processing;

**b.**  Change of address lookup and address verification;

**c.**  Social Security Number verification and death registry lookup;

**d.**  Enrollment in Credit Monitoring for a period up to 12 months from the date of enrollment;

**e.**  Enrollment in monitoring for individuals under the age of 18, with continuous service until they reach the age of majority;

    f.   Automatic enrollment in Identity Protection, Repair and Resolution Services for a period of 12 months from the date of enrollment; and

    **g.**   **Call center services** for a period of up to 12 months following notification of a **privacy and network security incident.**

Nothing in this Section is meant nor will it be construed as a guarantee that the Preferred Providers will be available to provide the services described herein.  We reserve the right to substitute a provider of like qualifications and competency in the event that a Preferred Provider is unavailable to perform the services.

We may also change, amend or supplement our Preferred Providers from time to time for any reason.  Both we and **you** will agree in writing prior to retaining any vendor that is not a Preferred Provider.

Without our prior written consent, no coverage will be available under this endorsement for any services performed by, or any engagement of, any third party service providers that are not specifically identified in this endorsement or pre-approved by us.

**K.**    **Business Income Loss Calculation**

The amount of **business income loss** will be calculated by an independent third party forensic accountant, to be mutually agreed upon in writing by us and **you**, taking into account both **your** net profit or loss during the 90 day period immediately preceding the **privacy and network security** incident that gave rise to the **business income loss** and the net profit or loss **you** potentially could have generated had the **privacy and network security incident** not occurred.

**L.**    **Extended Reporting Period**

    **1.**   If this policy is cancelled or non-renewed for any reason other than non-payment of premium, the **named insured** has the right, within sixty (60) days of the end of the policy period, to purchase an Extended Reporting Period for one year for an additional premium of 100% of the premium charged for this endorsement.  Once purchased, the premium for the Extended Reporting Period will be deemed fully earned.

    **2.**   If the Extended Reporting Period is purchased, the additional premium and effective dates will be stated in the Extended Reporting Period endorsement.

    **3.**   The Extended Reporting Period does not increase or reinstate our limits of liability and this policy does not cover **loss** or **expense** from any **wrongful act** which first takes place after the end of the policy period.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT PRACTICES LIABILITY – DEFENSE COVERAGE ENDORSEMENT – MINNESOTA

This endorsement modifies insurance provided under the following:

### PROFESSIONAL LIABILITY COVERAGE PART DENTISTS/ORAL SURGEONS

In consideration of the premium paid, the policy is modified as follows:

**IMPORTANT NOTICE: THIS ENDORSEMENT IS WRITTEN ON A "CLAIMS MADE" BASIS AND, WITH RESPECT TO CLAIMS ALLEGING EMPLOYMENT PRACTICES WRONGFUL ACTS WHICH ARE FIRST MADE AGAINST YOU WHILE THIS POLICY IS IN FORCE OR DURING ANY APPLICABLE EXTENDED REPORTING PERIOD, , PROVIDES COVERAGE ONLY FOR CERTAIN CLAIM EXPENSES.  NO COVERAGE IS PROVIDED FOR AWARDS, JUDGMENTS, SETTLEMENTS OR OTHER MONETARY SUMS RELATED TO SUCH CLAIMS.  READ ALL TERMS OF THIS ENDORSEMENT CAREFULLY.**

| | | |
|---|---|---|
| Prior Acts Date of this Endorsement: | (See Attached Dentist Schedule) | |
| Limits of Defense Coverage Payable By Us: | $25,000 | Each Claim |
| Aggregate | $25,000 | Annual |
| Named Insured's Coinsurance Payment: | As set forthin Section II.D. Each Claim | |

As a condition precedent to the coverage provided pursuant to this endorsement, the payment of the premium must be made when due. Subject to the terms and conditions of this endorsement and the policy to which this endorsement is attached, we agree with **you** as follows:

## I.   COVERAGE AGREEMENTS

**A.**   We have the right to and will defend **you** and we will pay **claim expenses** incurred on **your** behalf in the defense of any **claim** not otherwise excluded under this coverage part, alleging an **employment practices wrongful act** against **you** which has been asserted by an **employee.** We will do this even if the **claim** is groundless, false or fraudulent, provided that at or prior to the **prior acts date** applicable to this endorsement **you** did not know, or could not have reasonably foreseen that such **employment practices wrongful act** would give rise to a **claim**. In such case, we will pay, subject to the limits of defense coverage stated above, and **your** coinsurance obligations described herein the fees, costs and expenses of such defense. We will select and designate defense counsel to defend the **claim** made against **you.**

**B.**   The **employment practices wrongful act** must begin on or after the **prior acts date** applicable to this endorsement and a **claim** must be first made against **you** after such **prior acts date** and reported to us prior to the end of the policy period stated on the policy Declarations and any applicable **extended reporting period**.

**C.**   All **claims** arising out of, or in connection with, the same or related **employment practices wrongful act,** shall be considered first made during the policy period in which the earliest **claim** arising out of such **employment practices wrongful act** was made, and all such **claims** shall be subject to the same limits of defense coverage.

**D.**   We have no duty to defend **you** or to pay **claim expenses** which are excluded from coverage under this endorsement.

**E.**   After **you** report a **claim** to us alleging an **employment practices wrongful act,** and subject to all other terms of this endorsement, we will appoint an attorney to defend **you.** The attorney designated by us to defend **you** will

continue to be paid by us, subject to **your** coinsurance obligations described herein, until our payment of **claim expenses** equals the limits of defense coverage.

F.  Once our payment of **claim expenses** equals the limits of defense coverage, **you** will be responsible for the payment of all further fees and expenses, including those of any attorney who thereafter may represent **you**. If **you** choose either not to continue to be represented by the attorney we originally assigned to represent **you** or **you** fail to agree with that attorney on the payment of future fees and expenses, **you** will:

1.  allow the attorney assigned by us to represent **you** to withdraw from representing **you**;

2.  do nothing to impede or prohibit that attorney from withdrawing from **your** representation; and

3.  cooperate with us and with that attorney to facilitate the withdrawal.

## II.  LIMITS OF DEFENSE COVERAGE

### A.  Each **Claim**

Subject to Paragraph **B.** below, the each **claim** limit of defense coverage stated above is the maximum we will pay for all **claim expenses** arising out of, or in connection with, the same or related **employment practices wrongful act**, regardless of the number of **you**, **claims** or claimants.

### B.  Annual Aggregate

The maximum we will pay for all **claim expenses** for **claims** which are made during the policy period shall not exceed the annual aggregate limit of defense coverage. The annual aggregate limit applies to each annual policy period

C.  The limits of defense coverage and coinsurance shall apply separately to each **named insured**. Those of **you** who are not **named insureds** share the **named insured's** limit of defense coverage and are subject to each **named insured's** coinsurance.

### D.  Coinsurance

Each **named insured** will share with us in the payment of all **claim expenses**, up to the applicable limits of defense coverage as the following illustrates:

| Claim Expenses | Named Insured's Coinsurance Payment | Our Payment |
|---|---|---|
| Percentage (%) of the first $5,000 | 0% | 100% |
| Percentage (%) of the following $30,000 | 33.33% | 66.67% |
| **Total: $35,000** | **$10,000** | **$25,000** |

The **named insured** shall be billed directly for the amount of the **named insured's** coinsurance payment and agrees to pay those amounts when due. The **named insured** shall reimburse us within 30 days of notice of payment on his, her or its behalf by us for any amounts we have paid which are the **named insured's** coinsurance payment obligation.

Failure to satisfy the coinsurance payment obligation under this provision may result in non-renewal of coverage at its expiration date.

## III.  SPECIAL DEFINITIONS

The definitions set forth below, in addition to those definitions set forth in the policy, are applicable to this endorsement. To the extent there is any inconsistency between the definitions in the policy and the definitions of this endorsement, the definitions set forth below control, but solely with respect to the coverage provided under this endorsement and for no other purposes whatsoever.

"**Claim**" means any:

**A.** demand for money or other relief by an **employee** naming **you** and alleging an **employment practices wrongful act**;

**B.** proceeding initiated against **you** by an **employee** alleging an **employment practices wrongful act** before any court, governmental body, or arbitrator or arbitration panel, which is legally authorized to render an enforceable civil judgment, award or order for money damages; or

**C.** proceeding initiated against **you** by an **employee** before the United States Equal Employment Opportunity Commission or other state or local governmental body whose purpose is to address **employment practices wrongful acts**.

**"Claim"** does not include criminal:

**A.** charges;

**B.** indictments;

**C.** investigations; or

**D.** proceedings of any kind or nature.

**"Claim Expenses"** means:

**A.** fees charged by an attorney we designate to defend **you**; and

**B.** all other reasonable fees, costs and expenses incurred or authorized by the attorney we designate to defend **you**, related to the investigation, adjustment and defense of a **claim**.

**"Claim Expenses"** shall not include:

**A.** any awards, judgments, settlements or other monetary amounts, including, but not limited to, court costs or attorneys' fees, paid or payable to an **employee** in connection with or on account of a **claim**;

**B.** payment of insurance plan benefits claimed by or on behalf of retired **employees**, or that a claimant would have been entitled to as an **employee** had **you** provided the claimant with a continuation of insurance;

**C.** any fees, costs or expenses incurred or authorized by **you**, or anyone acting on **your** behalf, without our prior written consent; or

**D.** any **claim expenses** charged by an attorney who we did not designate to defend a **claim** asserted against **you**, unless we agreed in writing to pay these **claim expenses** before they were incurred.

**"Discrimination"** means an employment termination, a demotion, a failure or a refusal to hire or to promote, a payment of wages and/or of benefits, an assignment of job duties, of job responsibilities and/or of hours of work, or an assignment of supervisor(s), and/or an application of **your** employment policies or procedures which is motivated in whole or in part by the **employee's** race, color, religion, creed, age, sex, disability (as defined in the Americans with Disabilities Act of 1990 including any amendments thereto or as determined by any court ruling) national origin, sexual orientation or preference, , and/or pregnancy.

**"Employee"** means any natural person whose service or work was or now is engaged and directed on a daily basis by **you**, including any current or former full-time or part-time **employees**, current or former **supervisory employees**, and applicants for employment.

**"Employee"** does not mean any seasonal or temporary employees, volunteers, owners, partners, shareholders or members of the **named insured**.

**"Employment Practices Wrongful Act"** means one or more of the following alleged acts, insofar as they arise out of an **employee's** employment with any **named insured**: **discrimination**, **sexual harassment**, **wrongful termination**, breach of any employment agreement, breach of the implied covenant of good faith and fair dealing, misrepresentation, equal pay violations, invasion of privacy, defamation, negligent or intentional infliction of emotional

distress, retaliation, and/or any other violation of any federal, state or local statute or ordinance relating to the above types of **claims**.

"**Extended reporting period**" means the time after the policy period for reporting **claims** due to an alleged **employment practices wrongful act**. The **claim** must occur on or after the **prior acts date** and before the end of the policy period, and coverage is otherwise subject to all limitations and exclusions of this amendatory endorsement.

"**Named Insured**" means any entity or any dentist listed on the Declarations or in any Schedule of Insured Dentists.

"**Sexual Harassmen**t" means unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature when:

A.  submission to such conduct is either implied or stated to be a term or condition of employment, or a factor in evaluating the individual's job performance, eligibility for promotion, eligibility for an increase in compensation or any other component of employment; or

B.  such conduct interferes either directly or indirectly with an individual's work performance by creating a hostile, offensive or intimidating environment.

"**Retire**" means the complete cessation of performing work or engaging in **your** own occupation.

"**Supervisory Employees**" means any **employee** of **yours** who has the authority to employ, promote, demote, terminate employment, grant salary increases, direct the work of, discipline, and/or evaluate the performance of other **employees** of **yours**.

"**Totally and permanently disabled**" means that **you** have become so disabled, as a result of injury or disease, as to be wholly prevented from performing work or engaging in **your** own occupation. Such a condition must have existed continuously for not less than six months and must be expected to be continuous and permanent.

"**Wrongful Termination**" means any termination of employment in a manner in violation of any law or is in breach of any employment agreement.

"**You**" or "**Yours**" means:

A.  any **named insured**;

B.  if the **named insured** is an individual, the person designated, but only with respect to the conduct of a business of which that individual is a sole proprietor; and

C.  any of the **named insured's** owners, executive officers, partners, shareholders of professional corporations, members of limited liability corporations, **supervisory employees** or members of the board of directors, trustees or governors, but only while acting within the scope of their duties as such.

## IV. EXCLUSIONS

We will not pay under this endorsement any awards, judgments, settlements, or monetary sums paid or payable to an **employee** on account of a **claim** or any fees, costs or expenses resulting from compliance with non-monetary relief.

In addition, we will not pay **claim expenses** incurred as a result of any **claim**:

A.  brought by **your** spouse, child or other dependent;

B.  brought by any former or present director or officer, owner, shareholder, member, partner, predecessor or successor firm;

C.  alleging any **employment practices wrongful act** which began before the **prior acts date** of this amendatory endorsement;

D.  required to be listed in response to a question in the application, any **claim** arising out of a circumstance required to be listed in response to a question in the application, or any **claim** of which **you** gave written notice before the issuance of this amendatory endorsement to any insurer under any other policy;

**E.** arising from facts, situations or circumstances which, as of the **prior acts date** applicable to this endorsement, **you** knew or could have reasonably foreseen, or which a reasonable person could have foreseen, might be the basis of a **claim** against **you** alleging an **employment practices wrongful act**;

**F.** whose sole allegations seek the recovery of judgments or awards which are deemed uninsurable by law;

**G.** alleging any **employment practices wrongful act** for which **you** are liable as an administrator, executor, conservator, guardian, or any similar fiduciary capacity;

**H.** under the Employee Retirement Income Security Act of 1974, Public Law 93-406, including amendments thereto, commonly referred to as "ERISA" or the Pension Reform Act of 1974;

**I.** for unemployment compensation, or Workers' Compensation, disability benefits and/or other similar **claims**;

**J.** under the Worker Adjustment and Retraining Notification Act, Public Law 100-379, (1988), including amendments thereto and/or other similar laws;

**K.** under the Family and Medical Leave Act, Public Law 103-3, (1993), including amendments thereto, and/or other similar laws;

**L.** under any federal, state or local statutory law or common law or any of their amendments which are similar to the statutes referred to in Sections **IV. H.** through **IV. K.** of this endorsement;

**M.** under any government or administrative order or regulation relating to employment practices under which **you** have either implicitly or explicitly consented to be bound;

**N.** alleging any **employment practices wrongful act** based on an alleged failure to pay wages and/or benefits due or payable to an **employee**, except where the alleged failure to pay wages and/or benefits is caused by **discrimination**;

**O.** alleging any **employment practices wrongful act** committed by **you** or at **your** direction with actual or alleged dishonest, fraudulent, and/or criminal purpose;

**P.** arising out of injury to any person, with the exception of a **claim** of **employment practices wrongful act**;

**Q.** arising out of or in connection with any labor disputes or negotiations, including but not limited to the replacement of **employees**, lockouts, strikes, picket line violence, boycotts, union organizations, unfair labor practices or other similar actions;

**R.** seeking damages, costs or expenses incurred by **you** pursuant to the Americans with Disabilities Act of 1990, including any amendments thereto or as determined by any court ruling with the exception of a **claim** for an **employment practices wrongful act**; or

**S.** arising out of any partnership, joint venture, corporation or other entity of which **you** are a partner, owner, shareholder or member and which is not designated in this policy as a **named insured**.

## V.  SPECIAL CONDITIONS

The conditions set forth below, in addition to those set forth in the policy, are applicable to this endorsement. To the extent there is any inconsistency between the conditions in the policy and the conditions of this endorsement, the conditions set forth below control, but solely with respect to the coverage provided under this endorsement and for no other purposes whatsoever.

**A.** Notice and Cooperation

If a **claim** is made against **you** during the policy period for an alleged **employment practices wrongful act** that happened after the **prior acts date**  applicable to this  endorsement, **you** must give notice to us as soon as reasonably possible.

Notice given by or on your behalf, or notice given by or on behalf of any claimant, to any of our licensed agents authorized by us to sell this endorsement in this state, with particulars sufficient to identify **you**, shall be deemed notice to us.

To the extent possible, notice should include:

1. the identity of the claimant alleging the **employment practices wrongful act**;

2. the identity of the person who allegedly committed the **employment practices wrongful act** and any witnesses;

3. the date the alleged **employment practices wrongful act** took place; and

4. a copy of any written complaint, charge or demand.

In addition to the above, **you** agree to immediately:

1. fully cooperate with us or our designee in the investigation or defense of any **claim** or the enforcement of any rights of contribution or indemnity against another who may be liable to **you** because of such alleged **employment practices wrongful act**;

2. forward copies of all documents which **you** receive in connection with the **claim** to us; and

3. attend hearings and trials, assist in securing and giving evidence, completing narrative reports, and obtaining the attendance of witnesses.

No one is authorized, except at **your** own cost, to voluntarily make any payment, assume any obligation or incur any expense without our consent.

**B.** Other Insurance

Solely with respect to this endorsement, the following provision replaces paragraph XI. (**INSURANCE UNDER MORE THAN ONE COVERAGE**) of the Common Policy Conditions to which this endorsement is attached:

With respect to any **claim** or **claims** to which this endorsement applies, no coverage shall be available under any other Coverage Part of this policy or any other insurance policy issued by us.

## VI. AWARD OF COURT COSTS AND/OR ATTORNEYS' OR OTHER FEES

**A.** Awards to **you** and/or to us

In the event that **you**, us, and/or the attorney designated by us to represent **you**, are awarded court costs, attorneys' fees or other fees, the award shall be distributed to **you** and to us based on the percentage of total payment made by **you** and by us in defense of the **claim** up to the time the award is made.

**B.** Sanctions

1. Any costs, attorneys' fees or fines ordered by a court or government agency to be paid by **you** resulting from **your** conduct will be paid solely by **you** and will not be reimbursed by us.

2. Any costs, attorneys' fees or fines ordered by a court or government agency to be paid to the court or government agency by us or the attorney designated by us to represent **you**, resulting from our conduct or the conduct of the attorney designated by us to represent **you**, will be paid solely by us.

3. Unless otherwise prohibited by law, **you** will reimburse us or the attorney designated by us to represent **you**, for any costs, attorneys' fees and/or fines that are assessed against us or the attorney assigned by us to represent **you**, and which result from conduct attributable to **you**.

## VII. EXTENDED REPORTING PERIOD

**A.** If this policy is cancelled or non-renewed for any reason other than non-payment of premium, the **named insured** first listed on the Declarations on behalf of all of **you** shall have an automatic **extended reporting period** at no charge, which terminates one year after the end of the policy period. Such **extended reporting period** coverage shall be applicable to **claims** arising from **employment practices wrongful act** that occurred prior to the end of the policy period and which are otherwise covered by this policy, subject to the following conditions:

    **1.**  Such extension for the reporting of **employment practices wrongful acts** shall not apply to:

        **a.**  any paid **claim**; or

        **b.**  any pending **claim** or proceedings;

**B.** The limits of liability stated under this policy at the time of cancellation or non-renewal will be the limits of liability applying to the **extended reporting period**.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AUTOMATIC TERMINATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMON POLICY CONDITIONS

In consideration of the premium paid, the policy is modified as follows:

**AUTOMATIC TERMINATION**

This policy will automatically terminate at the end of the policy period if **you** or **your** representative do not accept our offer to renew it.  **Your** failure to pay the required renewal premium as we require means that **you** have declined our offer.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

 

# PROFESSIONAL LIABILITY COVERAGE PART
# DENTISTS/ORAL SURGEONS CLAIMS-MADE

YOUR PROFESSIONAL LIABILITY INSURANCE IS WRITTEN ON A "CLAIMS-MADE" BASIS AND PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE THE RESULT OF DENTAL INCIDENTS HAPPENING SUBSEQUENT TO THE PRIOR ACTS DATE, IF ANY, STATED ON THE DECLARATIONS AND WHICH ARE FIRST MADE AGAINST YOU WHILE THIS INSURANCE IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST YOU AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES.

We are the stock insurance company named on the Declarations. Throughout this policy the words we, us and our, refer to the company providing this insurance. We agree with you as follows:

I.   COVERAGE AGREEMENTS

We will pay all amounts up to the limit of liability, which you become legally obligated to pay as a result of injury or damage. We will also pay claim expenses. The injury or damage must be caused by a dental incident arising out of the supplying of or failure to supply professional services by you or anyone for whose professional acts or omissions you are legally responsible.

The dental incident as described above must happen on or after the prior acts date and the claim must be first made prior to the end of the policy period stated on the Declarations of this policy.

We have the right and will defend any claim. We will:

A.   do this even if any of the charges of the claim are groundless, false or fraudulent;

B.   investigate any claim as we feel appropriate;

C.   negotiate and settle any claim; and

D.   not settle any claim without your consent, which will not be unreasonably withheld.

Our payment of the limit of liability ends our duty to defend or settle.

We have no duty to and will not defend or indemnify any claims not covered by this Coverage Part.

E.   We will also provide defense coverage if you become subject to a state regulatory civil investigation. This investigation must be the outcome of injury or damage resulting from a dental incident otherwise covered under this policy. In such case, we will pay your attorney fees, costs, expenses and we will select legal counsel. You must provide us with written notice of any state regulatory authority investigation within the current policy period.

II.   EXCLUSIONS

We will not defend, or pay, under this Coverage Part for:

A.   injury to:

1.   the named insured's employee arising out of and in the course of employment by the named insured; or

2.   the spouse, child, parent, brother, or sister of that employee as a consequence of 1. above.

This exclusion applies:

1.   whether the named insured may be liable as an employer or in any other capacity; and

2.   to any obligation the named insured has to indemnify some other entity because of such injury.

This exclusion does not apply:

1.   to liability assumed under an insured contract; or

2.   to a claim resulting from immediate dental care given to an employee after the injury and/or to a dental incident arising from your professional services to any employee.

**B.**   any amounts you or any entity must pay under any unemployment or Workers' Compensation, disability benefits, or other similar law;

C.   any liability you assume under any contract or agreement.  This exclusion does not apply to:

1.   liability that you would have in the absence of the contract or agreement but only as respects professional services provided by you or anyone for whom you are legally responsible;

2.   liability you assume in a contract with:

   a.   Health Maintenance Organizations;

   **b.**   Preferred Provider Organizations;

   c.   Independent Practice Associations; or

   **d.**   Any other similar organization;

   but only as respects professional services provided by you;

3.   professional services rendered as a dentist under contract or agreement with a dentist or a provider of dental professional services;

4.   a warranty of fitness or quality of any therapeutic agents or supplies you have furnished or supplied in connection with  treatment you have performed;

**D.**   injury or damage resulting from a dental incident which is also a willful violation of a statute, ordinance or regulation imposing criminal penalties;

We will defend any civil suit against you seeking amounts which would be covered if this exclusion did not apply. In such case, we will pay only the fees, costs, and expenses of such defense;

E.   any liability you have as a proprietor, superintendent, director, administrative or executive officer of any:

1.   hospital, nursing home or sanitarium;

2.   clinic with bed and board facilities; or

3.   laboratory or business.

This exclusion does not apply to your professional liability arising out of laboratory facilities:

1.   you maintain for your own patients; or

2.   necessary to the practice of your specialty;

F. any injury, sickness, disease, death or destruction:

    1. with respect to which you are also an insured under a Nuclear Energy Liability Policy issued by:

        a. Nuclear Energy Liability Insurance Association;

        **b.** Mutual Atomic Energy Liability Underwriters; or

        c. Nuclear Insurance Association of Canada,

    or would be an insured under any such policy if it had not terminated due to exhaustion of its limit of liability; or

    2. resulting from the hazardous properties of nuclear material and with respect to which:

        a. any entity is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any of its amendments; or

        **b.** you are, or had this policy not been issued would be, entitled to indemnity from the United States of America or any of its agencies, under any agreement entered into by the United States of America or any of its agencies with any entity;

    3. resulting from the hazardous properties of nuclear material if:

        a. the nuclear material:

            1) is at any nuclear facility owned or operated by or on your behalf;

            2) has been discharged or dispersed therefrom;

            3) is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on your behalf; or

        **b.** the injury, sickness, disease, death or destruction arises out of the furnishing by you of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility. If such facility is within the coverage territory, this subparagraph 3.**b.** applies only to injury to or destruction of property at such nuclear facility.

G. any fines, penalties, sanctions, government payments or the return or withdrawal of fees for patient treatment or any multiplication of amounts payable under this policy imposed by law;

H. a dental incident resulting from professional services by any dentist who is not listed on the Declarations or on the Schedule of Insured Dentists, however, this exclusion does not apply to any liability you may have as a result of such dental incident;

I. injury or damage you expected or intended, or which a reasonable person could have expected;

    This exclusion does not apply to injury resulting from the use of reasonable force to protect persons or property.

J. any claim arising out of actual or alleged involvement in any:

    1. anti-trust law violation; or

    2. agreement or conspiracy to restrain trade;

    This exclusion does not apply to claims arising from your activity at our request as a member of any committee, panel, or board which provides underwriting or claims advice or recommendations to us, provided your activity is within the scope of the committee's, panel's or board's established guidelines.

K.   injury or damage arising out of pollution or pollutants;

This exclusion also applies to any loss, cost or expense arising out of any:

1.   request, demand or order that you or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

2.   claim by or on behalf of a governmental authority for amounts because of testing for, monitoring, cleaning up removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants;

L.   any claim:

1.   arising out of a dental incident which happened:

a.   prior to the prior acts date of this policy;

b.   after the prior acts date if, on the inception date of this policy, you either knew or had a reasonable basis to have known that it could result in a claim; or

2.   which on the inception date of this policy is the subject of a:

a.   reported dental incident;

b.   pending claim or proceeding; or

c.   which is a paid claim.

M.   injury or damage for which you may be held liable as a result of loss of use of tangible property which has not been physically injured or destroyed if:

1.   a delay in or lack of performance has been caused by or on your behalf under any contract or agreement; or

2.   your products or work completed on your behalf do not meet the standards you have warranted or represented;

We will cover loss of use of other tangible property if:

1.   the loss results from a sudden  and accidental physical damage or destruction of your products or work completed by or on your behalf; and

2.   the products or work has been  put to use by an entity other than you;

N.   amounts claimed as a result of the withdrawal, inspection, repair, replacement, or loss of use of your products. This also applies to work completed by or for you, and any property of which your products form a part. This exclusion only applies if the withdrawal from the market or use is due to a known or suspected defect or deficiency;

O.   any claim made against you, or any person for whose acts or omissions you are legally responsible, for any act of sexual intimacy, sexual molestation or sexual assault or any act similarly defined regardless of whether or not such abuse or sexual misconduct was committed in conjunction with or under the guise of professional services.

We will defend any civil suit against you seeking amounts which would be covered if this exclusion did not apply. In such case, we will pay only the fees, costs and expenses of such defense.

P.   a dental incident involving:

1.  you, if at the time of the dental incident, you knew your state license (permanent or provisional) was suspended, revoked, terminated, not issued or fraudulently obtained, or restricted or on probationary status with respect to the specific professional services upon which the claim is based; or

2.  the prescribing or dispensing of controlled substances by you or anyone for whose acts you are legally responsible if the required license or registration to prescribe or dispense such controlled substances was not in effect.

## III.   LIMITS OF LIABILITY

**A**.   Each Claim

The limit of liability stated for each claim is the limit of our liability for all injury or damage arising out of, or in connection with, the same or related dental incident.

**B**.   Aggregate

Subject to provision **A**. above, the total limit of our liability for all injury or damage shall not exceed the limit of liability stated as aggregate.  All dental incidents for which claims are made during the policy period are included. The aggregate limit of liability applies to each annual policy period.

C.   Claim Expenses

Claim expenses are in addition to our limit of liability.

**D**.   All claims arising out of the same dental incident, regardless of when such claims are made shall be considered first made during the policy period in which the earliest claim arising out of the same dental incident was made, and all such claims shall be subject to one applicable limit of liability.

E.   The limits of liability shall apply separately to each named insured. Those of you who are not named insureds share the named insured's limit of liability.

## IV.   DEFINITIONS

"Claim" means either a demand for money or services, or a lawsuit, naming you and alleging a dental incident.

"Claim" also means a dental incident which you report to us during the policy period which might result in a claim. The report of such dental incident must include:

**A**.   the date, time and place of the incident;

**B**.   what happened and what professional services you performed;

C.   the type of claim you anticipate; and

**D**.   the name and address of the injured party, and of any witnesses.

"Damage" means:

**A**.   partial or total physical damage to tangible property.  Such damage must happen on or after the prior acts date and during the policy period prior to expiration.  Loss of use of damaged property is also included;

**B**.   loss of use of undamaged property. This loss of use must be caused by a dental incident during the policy period.

"Dental Incident" means any actual or alleged act, error or omission, or a series of actual or alleged acts, errors or omissions, in the supplying of or failure to supply professional services by you or by anyone  for whom you are legally liable. We also include your professional services as a member of a formal accreditation, standards review or other professional board or committee related only to a professional dental society or a hospital.

**"Extended Reporting Period"** means the time after the policy period, for reporting claims due to a dental incident. The dental incident must occur on or after the prior acts date and before the end of the policy period.

**"Independent Contractor"** means a person or entity who would be classified as such under the IRS definition.

**"Injury"** as defined in the General Conditions, shall also include the following:

**A**.  malicious prosecution;

**B**.  false arrest, detention, imprisonment;

**C**.  wrongful entry or eviction or other invasion of the right of private occupancy;

**D**.  a violation of an individual's right to privacy;

**E**.  oral or written publication of material that:

    1.  slanders or libels an entity or disparages an entity's goods, products or services; or

    2.  violates a person's right of privacy;

**F**.  the performance of or failure to perform autopsies;

**G**.  testimony given at or arising out of inquests; and

**H**.  advertising injury.

"Named Insured" means any entity or any dentist listed on the Declarations or in any Schedule of Insured Dentists. Named Insured also includes any dentist who becomes a partner,  stockholder, or employee during the policy period provided that within 30 days after becoming a stockholder, partner, or employee:

**A**.  we are notified of such appointment, election, ownership, or employment;

**B**.  on the date we are notified, all other dentists who are partners, officers, shareholders, or employees are named in this policy.

**"Nuclear Material"** means source material, special nuclear material or by-product material.

**"Prior Acts date"** means the date stated on the Declarations that is either:

**A**.  a date concurrent with the effective date of the policy; or

**B**.  a particular date other than the effective date of the policy upon which we and you agree that policy coverage will be applicable.

**"Professional Services"** means those services for which you are licensed, trained and qualified to perform in your profession as a dentist.  Professional Services also includes your activities as a member of a formal accreditation, standards review or other professional board or committee related only to a professional society or hospital. Professional Services also mean Utilization Management Services.

**"Retire"** means the complete withdrawal from the practice of dentistry.

**"Totally and permanently disabled"** means that you have become so disabled, as a result of injury or disease, as to be wholly prevented from performing work or engaging in your own occupation for remuneration or profit.  Such a condition must have existed continuously for not less than six months and must be expected to be continuous and permanent.

"Utilization Management Services" means those services that you perform in the evaluation of the necessity, appropriateness, quality and cost of prescribed professional services, for purposes of determining when and whether such professional services will be authorized under any healthcare plan.

**"You"** or **"Your"** means:

**A**. any named insured only while performing professional services;

**B**. any named insured's employees other than a dentist, but only while acting within the scope of their duties as such and only while performing professional services;

C. any independent contractor dental hygienist of a named insured, but only while acting within the scope of such independent contractor's duties on behalf of a named insured and while under sole direction or supervision of such named insured and only while performing professional services; or

**D**. any dentist not listed on the Declarations or in any Schedule of Insured Dentists, but only while performing those services for which such dentist is licensed, trained and qualified to perform in their profession as a dentist on behalf of the named insured during a working interview and while under the sole direction or supervision or such named insured and only while performing professional services.

All persons as identified in items **B**., C. and **D**. above share the coverage provided to the named insured, including their limits of liability and applicable restrictions.

V.     EXTENDED REPORTING PERIOD

**A**. Termination

If this policy is terminated for any reason other than failure to pay the premium, if such unpaid premium is paid in full and extended reporting period premium is paid in advance, named insured has the right to an extended reporting period.

To use this right, such named insured must:

1.   write to us within 60 days of the termination requesting such extension; and

2.   pay the premium to us promptly when due.  The premiums will be developed from the rules, rates, and rating plans in effect at the inception of the last policy period.

**B**. Death, Disability, or Retirement

If a natural person named insured:

1.   dies or becomes totally and permanently disabled during the policy period; or

2.   retires during the policy period and:

a.   is 55 years or older and has been continuously insured with the Program for at least the immediately preceding 5 years; or

**b**.   has been continuously insured with the Program for at least the immediately preceding 10 years;

we will give such named insured  this unlimited extended reporting period coverage at no charge.

Such named insured and  his or her estate,  must within 60 days after the end of this policy write to us requesting such coverage.  We also require:

1.   written proof of the date of death; or

2. written proof of such total and permanent disability, including the date it occurred, certified by the attending physician.

Such named insured agrees to submit to medical examinations by any physician we designate if requested.

C. The limits of liability stated under this policy at the time of termination, death, disability, or retirement will be the limits of liability applying to the extended reporting period.

A prior acts date once established cannot be changed except at your written request approved by us in writing prior to that change being effective.

## VI. FIRST AID SUPPLEMENT

**A.** Coverage

We will reimburse you up to $10,000 each person for reasonable first aid expenses incurred by your patients and paid by you, for emergency medical aid caused by a dental incident. Reimbursement will be made upon receipt of sufficient supporting documentation establishing payment by you for covered first aid expenses.

**B.** Exclusions

First aid expenses shall not include any expense incurred:

1. for services provided by:

   a. you; or
   **b.** any entity or person employed by or under contract with you, to provide such services.

2. for any obligation you or any entity has under any unemployment or Worker's Compensation, Disability Benefits, or other similar law; or

3. caused by any failure to render professional services.

C. Special Conditions/Definitions

1. If we request, the injured person, or someone on their behalf, shall give us written proof of claim for first aid expenses, under oath if required, as soon as practicable. If we request, the injured person shall execute authorization to enable us to obtain medical reports and copies of records. The injured person will also submit to physical examinations by physicians selected by us. The examinations will be made when, and as often as we may reasonably require.
2. A reimbursement payment by us to you does not imply an admission of liability.

3. "First Aid Expenses" means emergency medical aid rendered by someone other than a person or entity specifically excluded from coverage under paragraph **B**. Exclusions above, at the time of the dental incident and which was reasonably medically necessary to stabilize a patient's condition immediately following a dental incident. First aid expenses includes:

   a. medical, surgical, x-ray and dental services, drugs, medical and surgical supplies, including but not limited to prosthetic devices; and
   **b.** ambulance and hospital costs; and
   c. blood testing costs incurred within 12 months of the accident.

4. "Emergency Medical Aid" means professional treatment, provided on an emergent basis for the purpose of stabilizing illness or injury, provided by a licensed medical and/or dental healthcare professional or healthcare facility.

## VII. SPECIAL CONDITIONS

The following Conditions apply in addition to the Common Policy Conditions.

**A**. Liberalization

If we make any revision that would broaden the coverage under this Coverage Part without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**B**. Territory

This policy applies to dental incidents taking place anywhere in the world; provided, however, that claim is made and suit is brought against you in the coverage territory

C. Cooperation

You shall fully cooperate with us in the investigation of any claim by providing any requested information or materials.  You shall sit for examinations under oath and/or provide written statements as requested.

 

INDEX OF PROVISIONS
BUILDING, BLANKET DENTAL PRACTICE PERSONAL
PROPERTY AND INCOME COVERAGE PART

TOPIC | PAGE

I.  COVERAGE AGREEMENTS | 4

A. Covered Property | 4
1. Building | 4
2. Blanket Dental Practice Personal Property | 4
– Contents Inside the Building | 4
– Off-premises | 4
– Accounts Receivable; Valuable Papers including x-ray records and patient charts | 4
– Fine Arts | 4
– Money and Securities | 4
– Glass | 5
– Temporary Relocation | 6
3. Practice Income | 6
4. Extra Expense | 7
5. Extended Practice Income | 7
6. Rents | 7

B. Covered Related Expenses | 7
1. Backup of Sewer or Drain Water Damage | 7
2. Debris Removal | 7
3. Preservation of Property | 8
4. Fire Department Service Charges | 8
5. Fire Extinguisher Recharge | 8
6. Arson Reward | 8
7. Cost of Research - Valuable Papers | 8
8. Off Premises Power Failure | 9
9. Condominium Property | 9
10. Pollution Cleanup and Removal | 9
11. Lawns, Trees, Shrubs, Plants, Signs | 9
12. Personal Effects; Property of Others | 10
13. Expenses to Reduce Income Loss; Income Loss Due to Civil Authority; Income Loss Related to Alterations and New Buildings | 10
14. Money Orders and Counterfeit Paper Currency | 10
15. Forgery and Alteration | 11
16. Dentist's Electronic Equipment | 11
17. Claim Data Expense | 12
18. Computer Fraud | 12

C. Newly Acquired or Constructed Property | 12

D. Property Not Covered | 13

## INDEX OF PROVISIONS
## BUILDING, BLANKET DENTAL PRACTICE PERSONAL
## PROPERTY AND INCOME COVERAGE PART

| TOPIC | PAGE |
|---|---|
| II.   EXCLUSIONS | 14 |
| **A**.   Concurrent Causes | 14 |
| 1.   Ordinance or Law | 14 |
| 2.   Earth Movement | 14 |
| 3.   Volcanic Eruption | 14 |
| 4.   Government Action | 14 |
| 5.   Nuclear | 14 |
| 6.   War; Military Action | 14 |
| 7.   Water | 14 |
| **B**.   1.   Artificial Electric Current | 15 |
| 2.   Delay, Loss of Use or Market | 15 |
| 3.   Smoke | 15 |
| 4.   Wear, Tear | 15 |
| 5.   Rust, Corrosion, | 15 |
| 6.   Smog | 15 |
| 7.   Contaminants or Pollutants | 15 |
| 8.   Settling, Cracking | 15 |
| 9.   Insects | 15 |
| 10.  Mechanical Breakdown | 15 |
| 11.  Seepage, Leakage | 15 |
| 12.  Frozen Plumbing, Heating, Air Conditioning Equipment | 15 |
| 13.  Dishonest or Criminal Acts | 16 |
| 14.  Fraudulent Scheme or False Pretense | 16 |
| 15.  Certain Causes of Collapse | 16 |
| C.   1.   Weather Conditions | 16 |
| 2.   Indecision | 16 |
| 3.   Construction Related | 16 |
| **D**.   Special Exclusions | 16 |
| 1.   Finished Stock | 16 |
| 2.   Outdoor Television Equipment | 16 |
| 3.   Interference by Strikers | 16 |
| 4.   Any other consequential damage | 16 |
| E.   Limitations | |
| 1.   Limitations | 17 |
| 2.   Limitation of Theft damage | 17 |
| 3.   Limitation on Property in the Open | 17 |
| III.   **LIM**ITS OF INSU**RA**NCE | 17 |
| **A**.   Maximum Amount Payable | 17 |
| **B**.   Practice Income, Extra Expense, Extended Practice Income and Covered Related Expenses | 17 |
| C.   Deductible | 18 |
| **D**.   Inflation Guard | 18 |
| E.   Valuation | 18 |
| 1.   Building/Dental Practice Personal Property | 18 |
| 2.   Stock | 19 |
| 3.   Glass | 19 |
| 4.   Tenant's Improvements and Betterments | 19 |
| 5.   Valuable Papers and Records | 19 |

INDEX OF PROVISIONS
BUILDING, BLANKET DENTAL PRACTICE PERSONAL
PROPERTY AND INCOME COVERAGE PART

TOPIC                                                                                          PAGE

      6.  Practice Income                                          19
        a.  Actual Loss Sustained                              19
        b.  Valued Daily Limit                                 19
        c.  Actual Loss Sustained during period of restoration   20
      7.  Rents                                                    20
      8.  Actual Cash Value                                        20

IV.   DEFINITIONS                                                         20

–  Accounts Receivable Records                                        20
–  Blanket Dental Practice Personal Property                          20
–  Building                                                           20
–  Computer Fraud                                                     21
–  Covered Causes of Loss                                             21
–  Damage                                                             22
–  Dependent Property                                                 22
–  Electronic Media and records                                       22
–  Elevator                                                           22
–  Falling Objects                                                    22
–  Fine Arts                                                          23
–  Finished Stock                                                     23
–  Period of Restoration                                              23
–  Practice Income                                                    23
–  Rents                                                              23
–  Sinkhole Collapse                                                  23
–  Specified Causes of Loss                                           23
–  Stock                                                              23
–  Valuable Papers and Records                                        23
–  Volcanic Action                                                    24
–  Water Damage                                                       24

V.   CONDITIONS                                                          24
A.  Control of Property                                                24
B.  Legal Action Against Us                                            24
C.  Liberalization                                                     24
D.  No Benefit to Bailee                                               24
E.  Other Insurance                                                    24
F.  Waiver  of Rights of Recovery                                      25
G.  Abandonment                                                        25
H.  Appraisal                                                          25
I.  Duties In the Event of Damage                                      25
J.  Payment for Damage                                                 26
K.  Recovered Property                                                 27
L.  Vacancy                                                            27
M.  Mortgage Holders                                                   27

# BUILDING, BLANKET DENTAL PRACTICE PERSONAL PROPERTY AND INCOME COVERAGE PART

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words you and your refer to the named insured and anyone having a financial interest in the covered property.

The words we, us and our refer to the Company providing this Insurance.

Words and phrases that appear in bold facing have special meaning. Refer to **D**EFINITIONS in the Common Policy Conditions and in this Coverage Part.

I.   COVE**RA**GE **A**GREEMENTS

A.  Cov**e**r**e**d **P**r**o**pe**r**ty

We will pay for all direct physical **d**amage to covered property at the premises described on the Declarations caused by or resulting from any cov**e**r**e**d cause of **l**oss.

Covered property means the following types of property for which a limit of insurance is shown on the Declarations or which is shown below:

1.  **Buil**ding;

2.  You**r bl**anket **d**ental **p**ractice pe**r**sonal **p**rope**r**ty:

a.  located:

   1)  in or on the **buil**ding; or

   2)  in the open, or in a vehicle, within 1000 feet of the described premises.

b.  off-premises, anywhere in the world. The most we will pay for **d**amage when caused by or resulting from a cov**e**r**e**d cause of **l**oss is $30,000. However, this coverage does not apply if the **d**amage is covered under 2.g. below.

c.  including accounts **r**eceivab**l**e **r**eco**rd**s and other va**l**uab**l**e pape**r**s an**d** reco**rd**s including x-ray negatives and prints and patient's charts;

d.  including fine a**r**ts, subject to the following:

   1)  the **d**amage is caused by a cov**e**r**e**d cause of **l**oss; and

   2)  the most we will pay is $30,000 at each described premises with no more than $5,000 per item.

   Items valued at $1,500 or less are not considered fine a**r**ts. The limits of insurance for fine a**r**ts are in addition to the limits of insurance shown on the Declarations.

e.  and money and securities used in you**r** practice while at a bank or savings institution, within you**r** living quarters or the living quarters of you**r** partners or any employees having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

1) theft, meaning any act of stealing;

2) disappearance; or

3) destruction.

We will not pay for **d**amage:

1) resulting from accounting or arithmetical errors or omissions;

2) due to the giving or surrendering of property in any exchange or purchase; or

3) to property contained in any money-oriented device unless the amount of money deposited in it is recorded by a continuous recording instrument in the device.

The most we will pay for **d**amage in any one event is:

1) $20,000 inside the premises for money and securities while:

    a) in or on the described premises; or

    **b**) within a bank or savings institution; and

2) $15,000 outside the premises for money and securities while anywhere else.

All **d**amage:

1) Caused by one or more persons; or

2) Involving a single act or series of related acts;

is considered one event.

You must keep records of all money and securities so we can verify the amount of any **d**amage.

In the event of **d**amage we will determine the value as follows:

1) money at its face value; and

2) securities at their value at the close of practice on the day the **d**amage is discovered.

f.  Glass

1) We will pay for all glass other than art glass windows, including all lettering and ornamentation, located at the described premises:

    a) owned by you; or

    **b**) owned by others but in you**r** care, custody or control

2) We will also pay for necessary:

    a) expenses incurred to put up temporary plates or board up openings;

    **b**) repair or replacement of encasing frames; and

    c) expenses incurred to remove or replace obstructions.

g.  including temporary relocation of your blanket dental practice personal property subject to the following:

   1)  If your blanket dental practice personal property is removed from the described premises and stored temporarily at a location you own, lease or operate while the described premises is being renovated or remodeled, we will pay for damage to that stored property caused by or resulting from a covered cause of loss:

      a)  up to $50,000 at each temporary location; and

      b)  during the storage period of up to 90 consecutive days but not beyond expiration of this policy.

   2)  This Coverage does not apply if:

      a)  the stored property is more specifically insured; or

      b)  the damage is covered under 2.b. above.

h.  property, including property that would be considered part of the building, which you are responsible for or you are required to insure pursuant to the terms of a lease agreement.

3.  Practice Income

   a.  Blanket dental practice personal property

      We will pay for the actual loss of practice income you sustain, or the Valued Daily Limit, as described under Limits of Insurance provision III.E.6., due to the necessary suspension of your practice during the period of restoration. The suspension must be caused by direct physical damage to the building or blanket dental practice personal property at the described premises caused by or resulting from a covered cause of loss or power failure as described under Paragraph I.B.8.

      We will only pay for loss of practice income that occurs within 12 consecutive months after the date of direct physical damage or power failure as described under Paragraph I.B.8. Practice income coverage shall apply separately to each location affected by such suspension of practice.

   b.  Dependent Property

      We will pay for the actual loss of practice income you sustain up to a maximum of $10,000, regardless of the number of dependent properties, due to the necessary suspension of your practice during the period of restoration. The suspension must be caused by direct physical damage at the dependent property caused by or resulting from a covered cause of loss.

      Solely as respects dependent property and notwithstanding anything to the contrary, the period of restoration:

      1)  begins 24 hours after the time of direct physical loss or damages caused by or resulting from any covered cause of loss at the dependent property;

      2)  ends on the date when the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality; and

      As used herein, period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:

      a)  regulates the construction, use or repair, or requires the tearing down of any property; or

      b)  requires you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

4. Extra Expense

Extra expense means the extra expenses necessarily incurred by you during the period of restoration to continue normal services and operations which are interrupted due to damage by a covered cause of loss to the premises described, or power failure as described under Paragraph I.B.8. You will exercise due diligence and dispatch to restore normal practice services.

We will only pay for extra expenses that you incur within 12 consecutive months after the date of direct physical damage or power failure as described under Paragraph I.B.8.

5. Extended Practice Income

We will pay for the actual loss of practice income you incur during the period that:

a. begins on the date property, except finished stock, is actually repaired, rebuilt or replaced and your practice is resumed; and

b. ends on the earlier of:

1) the date you could restore your practice with reasonable speed, to the condition that would have existed if no direct physical damage happened; or

2) 12 consecutive months after the date determined in (1) above.

Loss of practice income must be caused by direct physical damage at the described premises caused by or resulting from any covered cause of loss.

6. Rents

The actual loss of rents or other income you sustain due to direct physical damage caused by or resulting from a covered cause of loss to your building at the described premises, whether rented or not, for the length of time which is required to rebuild, repair, or replace it, beginning with the date of damage during the policy period, but not limited by its expiration.

**B.** Covered Related Expenses

Coverage is provided for the following specified Covered Related Expenses. Any coverage provided for Covered Related Expenses under this form does not trigger any other coverages provided by this policy or any endorsement attached thereto. We will pay for the following expenses:

1. Back Up of Sewer or Drain

We will pay up to $25,000 for damage to covered property caused by water that backs up from a sewer or drain.

With respect to otherwise covered practice income and extra expense, damage to covered property caused by water that backs up from a sewer or drain, will be considered a covered cause of loss.

2. Debris Removal

We will pay up to 25% of:

a. the amount we pay for the direct physical damage to covered property; plus

b. the deductible in this policy applicable to that damage;

for expense to remove debris of covered property caused by or resulting from a covered cause of loss that happens during the policy period. The expenses will be paid only if they are reported to us in writing within

180 days of the earlier of:

    a.  the date of direct physical **d**amage; or

    **b**.  the end of the policy period.

This limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.

This coverage does not apply to costs to:

    a.  extract po**ll**utants from land or water; or

    **b**.  remove, restore or replace polluted land or water.

3.  Preservation of Property

If it is necessary to move covered property from the described premises to preserve it from, or for repair of, **d**amage by a cove**re**d cause of **l**oss, we will pay for any direct physical **d**amage to that property:

    a.  while it is being moved or while temporarily stored at another location; and

    **b**.  only if the **d**amage happens within 90 days after the property is first moved.

4.  Fire Department Service Charge

When the fire department is called to save or protect covered property from a cove**re**d cause of **l**oss, we will pay up to $25,000 for you**r** liability for fire department service charges:

    a.  assumed by contract or agreement prior to **d**amage; or

    **b**.  required by local ordinance.

No deductible applies to this covered related expense.

5.  Fire Extinguisher Recharge

We will pay up to an amount not exceeding $15,000 in any one event:

    a.  for the cost of recharging you**r** Underwriters Laboratories listed or Factory Mutual approved type ABC (multipurpose) fire extinguishers or dry chemical fixed pipe fire extinguishing systems after:

        1)  being used in fighting a fire; or

        2)  an accidental discharge;

        on you**r** premises or on adjoining premises.

    **b**.  for the cost of replacing or repairing faulty valves or controls which caused the accidental discharge on you**r** premises or on adjoining premises.

6.  Arson Reward

We will pay up to $10,000 for information which leads to an arson conviction in connection with **d**amage caused by fire covered under this Coverage Part. Regardless of the number of persons involved in providing information our liability will not be increased.

7.  Va**lua**b**l**e Pape**r**s an**d R**eco**rd**s - Cost of Research

We will pay your costs to research, replace or restore the lost information on damaged valuable papers and records, x-ray negatives and prints and patient charts including those which exist on electronic media and records, for which duplicates do not exist.

8. Power Failure

We will pay for damage to covered property caused by the failure of power or other utility service supplied to the described premises, resulting from direct physical damage which happens away from the described premises caused by a covered cause of loss. The interruption must result from a covered cause of loss to the following types of property not on the described premises, but supplying electricity, water, steam or gas to the described premises:

a.  utility generating plants;

b.  switching stations;

c.  substations;

d.  transformers; or

e.  transmission lines.

If damage by a covered cause of loss results, we will pay for that resulting damage.

We will not pay for damage you sustain during the 24 hours immediately following direct physical damage to the power or other utility service.

9. Condominium Property

If you are a condominium unit owner at a location insured under this policy, we will pay for damage to walls, floors, ceilings, floor coverings or any other property for which you are responsible or which you are required to insure by your condominium association agreement.

However, we will not pay for damage to such walls, floors, ceilings, floor coverings or any other property if someone other than you pays to repair or replace it.

10. Pollution Cleanup and Removal

We will pay your expense up to $25,000 for the sum of all such expenses arising out of covered causes of loss happening during each separate 12 month period of the policy, to extract pollutants from land or water at the described premises if the release, discharge or dispersal of the pollutants is caused by or results from a covered cause of loss that happens during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

a.  the date of direct physical damage; or

b.  the end of the policy period.

11. Lawns, Trees, Shrubs, Plants and Signs

We will pay for your signs other than signs attached to your buildings, lawns, trees, shrubs and plants including debris removal expenses.

a.  The most we will pay for damage to signs by a covered cause of loss is $10,000 at each described premises.

b.  The most we will pay for damage by a covered cause of loss is $10,000 at each described premises for

lawns, trees, shrubs and plants, but not more than $ 5,000 for any one tree, shrub or plant.

We will not pay for **d**amage to trees, shrubs, and plants resulting from the following causes of **d**amage: windstorm or hail; vehicles; vandalism; disease or growth failure.

12. Personal Effects and Property of Others

    a.  Personal effects owned by you, you**r** officers, you**r** partners or you**r** employees. The most we will pay for **d**amage is $50,000 at each described premises.

    **b**.  Personal property of others in you**r** care, custody or control located in or on the **b**uild**i**ng or in the open, or in a vehicle, within 1000 feet of the described premises. The most we will pay for **d**amage will not exceed the Blanket Dental Practice Personal Property limit as set forth on the Declarations at each described premises. Our payment for **d**amage to personal property of others will only be for the account of the owner of the property.

13. As respects practice income:

    a.  Expenses to Reduce **D**amage

        We will pay any necessary expenses you incur, except the cost of extinguishing a fire:

        1)  to reduce the amount of **d**amage;

        2)  to the extent that they do not exceed the amount of **d**amage that otherwise would have been payable;

        under this Coverage Part.

    **b**.  Civil Authority

        We will pay for the actual loss of p**r**actice income and **r**ents you sustain caused by action of civil authority that prohibits access to the described premises due to the direct physical **d**amage to property, other than at the described premises, caused by or resulting from any cove**red** cause of **l**oss. This coverage will apply for a period of up to 30 consecutive days from the time of that action.

    c.  Alterations and New Buildings

        We will pay for the actual loss of p**r**actice income you sustain due to direct physical **d**amage at the described premises caused by or resulting from any cove**red** cause of **l**oss to:

        1)  new **b**uild**i**ngs, whether complete or under construction;

        2)  alterations or additions to existing **b**uild**i**ngs; and

        3)  machinery, equipment, supplies or **b**uild**i**ng materials located on or within 1000 feet of the described premises and;

            a)  used in the construction, alterations or additions; or

            **b**)  incidental to the occupancy of new **b**uild**i**ngs.

        If such direct physical **d**amage delays the start of you**r** practice, the p**e**ri**o**d of **r**esto**r**ation will begin on the date you**r** practice would have begun if the direct physical **d**amage had not happened.

14. Money Orders and Counterfeit Paper Currency

    We will pay for loss due to:

a.  the acceptance in good faith, in exchange for merchandise, Money or services, of any post office or express money order, issued or claiming to have been issued by any post office or express company, if the money order is not paid upon presentation; or

b.  the acceptance in good faith in the regular course of business of counterfeit United States or Canadian paper currency.

The most we will pay for any loss is $10,000.

15.  Forgery and Alteration

a.  We will pay for loss resulting directly from forgery or alteration of, on or in any check, draft, promissory note, or similar written promise, order or direction to pay a sum certain in money, made or drawn by or drawn upon you or made or drawn by one acting as your agent or claiming to have been so made or drawn.

b.  If you are sued for refusing to pay the covered instrument on the grounds that it has been forged or altered, and you have our written consent to defend against the suit, we will pay any reasonable legal expenses that you incur in that defense. The amount we will pay for these legal expenses will be a part of and not in addition to the limit of insurance applicable to the Forgery and Alteration coverage.

The most we will pay for any loss and legal defense is $25,000.

16.  Dentist's Electronic Equipment

We will pay for direct damage to covered dentist's electronic equipment (including extra expense), located on or within 1000 feet of the described premises, caused by or resulting from a covered electronic equipment cause of loss as defined below. The most we will pay for damage and extra expense covered by this covered related expense is $50,000.

For purposes of this coverage, dentist's electronic equipment means any electronic dental equipment, computers, dental chair, x-ray equipment or other components capable of accepting information, processing it according to a plan and producing the desired results. This includes any telephone components or equipment, telephone switchgear, operating programs, related software, facsimile transmission equipment, telex equipment and other related hardware used for the transmission of communications. It also includes software for electronic data processing, recording or storage media such as films, tapes, cards, discs, drums or cells.

Covered electronic equipment cause of loss means risk of direct physical loss to dentist's electronic equipment except as excluded or limited below. The covered electronic equipment cause of loss also includes electrical disturbance.

We will not pay for loss or damage caused by or resulting from the exclusions as indicated below. Only the following exclusions as stated in this Coverage Part, Section II. EXCLUSIONS apply to dentist's electronic equipment:

a.  Exclusion A.4., Governmental Action;

b.  Exclusion A.5., Nuclear Hazard;

c.  Exclusion A.6., War And Military Action;

d.  Exclusion B.2., Delay, loss of use or loss of market;

e.  Exclusion B.4., Wear and tear;

f.  Exclusion B.5., Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

g.  Exclusion B.7., seepage, migration, escape, release, discharge or dispersal of contaminants or pollutants

unless the seepage, migration, escape, release, discharge or dispersal is itself caused by any of the specified causes of loss. But if damage by the specified causes of loss results, we will pay for the resulting damage by the specified causes of loss;

h.   Exclusion **B**.13., dishonest or criminal acts, by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

    1)   acting alone or with others; or

    2)   whether or not happening during the hours of employment.

This exclusion shall not apply to acts of destruction by your employees, but theft by employees is not covered.

The following additional exclusions shall also apply:

i.   Depreciation, obsolescence, dampness or dryness, cold or heat or any other cause of consequential loss or damage;

j.   Error, omission in machine programming or incorrect instructions to a machine;

k.   Errors, omissions or deficiencies in design, specification, materials or workmanship.

For purposes of this coverage e**l**ect**r**ical **d**istu**rb**ance means electrical injury, magnetic injury, disturbance of electronic recordings or erasure of electronic recordings including **d**amage caused by interruption of an electrical power supply, power surge, blackout or brownout.

The most we will pay for **p**ractice income as provided elsewhere in this Coverage Part for loss or **d**amage covered by this covered related expense is $2,500. This is part of and not in addition to the $50,000 limit stated above for this coverage.

17.   Claim Data Expense

a.   We will pay the reasonable expenses you incur in preparing claim data when we require such data to show the extent of **d**amage. This includes the cost of taking inventories, making appraisals, preparing income statements and preparing other documentation.

**b**.   Under this Covered Related Expense, we will not pay for:

    1)   Any expenses incurred, directed or billed by or payable to attorneys, insurance adjusters or their associates or subsidiaries;

    2)   Any costs in connection with the Appraisal Condition as set forth in Section V. CON**D**ITIONS; or

    3)   Any expenses incurred, directed or billed by or payable to insurance brokers or agents, or their associates or subsidiaries, without our written consent prior to such expenses being incurred.

c.   The most we will pay for preparation of claim data under this Covered Related Expense in any one occurrence is $5,000 regardless of the number of premises involved.

18.   Computer Fraud

We will pay for **d**amage up to a maximum of $10,000 to covered property caused by compute**r** f**r**au**d**.

## C.   New**l**y **A**cquired **O**r Const**r**ucte**d** P**r**ope**r**ty

Except as otherwise provided, the following provisions apply to property located in or on the **b**ui**l**ding or in the open, or in a vehicle, within 1000 feet of the described premises.

1. You may extend the insurance provided by this Coverage Part as follows:

   a. to apply to:

      1) your new buildings while being built on the described premises; and

      2) buildings you acquire at locations, other than the described premises, intended for similar use as the building described on the Declarations;

      3) your blanket dental practice personal property at any location you acquire.

   b. The most we will pay for damage under this Coverage Extension is:

      1) $1,000,000 on each newly acquired building;

      2) $500,000 on your blanket dental practice personal property, at each newly acquired location, whether owned, leased, occupied or controlled by you.

   c. You may extend your practice income coverage to apply at any location you acquire.

      The most we will pay for loss is $500,000 at each location.

2. Insurance for each newly acquired location will end when any of the following first happens:

   a. this policy expires; or

   b. 180 days expire after you acquire or begin to construct the property; or

   c. you report values to us.

   We will charge you additional premium for values reported from the date you acquire the property.

**D**. **Property Not Covered**

Covered Property does not include:

1. accounts, bills, currency, deeds, evidence of debt, money, notes or securities, except as provided in Paragraphs I.**A**.2.c., and I.**A**.2.e.;

2. animals;

3. automobiles;

4. contraband, or property in the course of illegal transportation or trade;

5. the cost of excavations, grading, backfilling or filling;

6. fine arts with a value exceeding $1,500 per item except as provided in Paragraph I.**A**.2.**d**.;

7. foundations of buildings, machinery or boilers if their foundations are below:

   a. the lowest basement floor; or

   b. the surface of the ground, if there is no basement;

8. land, including land on which the property is located, or water;

9. pilings, piers, wharves or docks;

10. property that is covered under another coverage part of this or any other policy in which it is more specifically described, except for the excess of the amount due, whether you can collect on it or not, from that other insurance;

11. underground pipes, flues or drains; or

12. vehicles or self-propelled machines, including aircraft or watercraft, that:

    a.   are licensed for use on public roads; or

    **b**.   are operated principally away from the described premises;

    This exclusion does not apply to:

    a.   snow removal or lawn care equipment; or

    **b**.   rowboats or canoes out of water at the described premises;

    that you own.

## II.   EXCLUSIONS

**A**.   We will not pay for **d**amage caused directly or indirectly by any of the following. Such **d**amage is excluded regardless of any other cause or event that contributes concurrently in any sequence to the **d**amage.

1. Ordinance or Law

    The enforcement of any ordinance or law:

    a.   regulating the construction, use or repair of any property; or

    b.   requiring the tearing down of any property, including the cost of removing its debris.

2. Earth Movement

    Any earth movement other than sinkhole collapse, such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. If **d**amage by fire or explosion results, we will pay for that resulting **d**amage.

3. Volcanic Eruption

    Any volcanic eruption, explosion or effusion. If **d**amage by fire, building glass breakage or volcanic action results, we will pay for that resulting **d**amage.

4. Governmental Action

    Seizure or destruction of property by order of governmental authority.

    We will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this coverage part.

5. Nuclear Hazard

    Nuclear reaction or radiation, or radioactive contamination, however caused.

    If **d**amage by fire results, we will pay for that resulting **d**amage.

6. War and Military Action

    a.  War, including undeclared or civil war;

    **b**.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7.  Water

    a.  Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

    **b**.  Mudslide or mudflow;

    c.  Water that backs up from a sewer or drain except as provided under the covered related expenses;

    **d**.  Water under the ground surface pressing on, or flowing or seeping through:

        1)  foundations, walls, floors or paved surfaces;

        2)  basements, whether paved or not; or

        3)  doors, windows or other openings.

        But if damage by fire, explosion or sprinkler leakage results, we will pay for that resulting damage.

**B.**  We will not pay for damage caused by or resulting from any of the following:

1.  artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;

    if **d**amage by fire results, we will pay for that resulting **d**amage.

2.  delay, loss of use or loss of market;

3.  smoke, vapor or gas from agricultural smudging or industrial operations;

4.  wear and tear;

5.  rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to **d**amage or destroy itself;

6.  smog;

7.  seepage, migration, escape, release, discharge or dispersal of contaminants or po**ll**utants unless the seepage, migration, escape, release, discharge or dispersal is itself caused by any of the specifie**d** causes of **l**oss. But if **d**amage by the specifie**d** causes of **l**oss results, we will pay for the resulting **d**amage by the specifie**d** causes of **l**oss;

8.  settling, cracking, shrinking or expansion;

9.  nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals;

10.  mechanical breakdown, including rupture or bursting caused by centrifugal force; or explosion or other **d**amage to steam boilers, steam pipe, steam engines or steam turbines, hot water boilers or other water heating equipment except sterilization heating equipment or domestic water supply systems owned or leased

by you, or operated under your control. If **d**amage by fire or combustion explosion results, we will pay for that resulting **d**amage. We will also pay for **d**amage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass;

11. continuous or repeated seepage or leakage of water that happens over a period of 14 days or more;

12. water, or other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment, except fire protective systems, caused by or resulting from freezing, unless:

   a. you do your best to maintain heat in the **b**uilding; or

   **b**. you drain the equipment and shut off the water supply if the heat is not maintained.

13. dishonest or criminal acts by you, any of you**r** partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

   a. acting alone or with others; or

   **b**. whether or not happening during the hours of employment.

   This exclusion shall not apply to acts of destruction by you**r** employees, but theft by employees is not covered.

14. voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense; or

15. collapse, except as provided under the Definition of cove**red** cause of **l**oss for ALL RISKS OF DIRECT PHYSICAL LOSS A., Collapse.

C. We will not pay for **d**amage caused by or resulting from any of the following. If **d**amage by a cove**red** cause of **l**oss results, we will pay for the resulting **d**amage:

1. weather conditions. this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Exclusions II. **A**.1. th**r**ough **A**.7. above to produce the **d**amage;

2. acts or decisions, including the failure to act or decide, of any entity;

3. faulty, inadequate or defective:

   a. planning, zoning, development, surveying, siting;

   **b**. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   c. materials used in repair, construction, renovation or remodeling; or

   **d**. maintenance;

   of part or all of any property on or off the described premises.

D. Specia**l** Exc**l**usions

As respects p**r**actice income coverage, we will not pay for:

1. any **d**amage caused by or resulting from:

   a. **d**amage or destruction of finishe**d** stock or prosthesis; or

   **b**. the time required to reproduce finishe**d** stock or prosthesis;

2. any **d**amage caused by or resulting from direct physical **d**amage to radio or television antennas, including their lead-in wiring, masts or towers;

3. any increase of **d**amage caused by or resulting from:

   a. delay in rebuilding, repairing or replacing the property or resuming you**r** practice, due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   b. suspension, lapse or cancellation of any license, lease or contract. if the suspension, lapse or cancellation is directly caused by the suspension of you**r** practice, we will cover such **d**amage that affects you**r** p**r**actice income during the peri**o**d of **r**esto**r**ation, but not beyond the peri**o**d of **r**esto**r**ation.

4. any other consequential damage.

E. **L**imitations

1. We will not pay for **d**amage to:

   a. the interior of any **b**uild**i**ng caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      1) the **b**uild**i**ng first sustains **d**amage by a cove**r**ed cause of **l**oss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      2) the **d**amage is caused by or results from thawing of snow, sleet or ice on the **b**uild**i**ng;

   b. building materials and supplies not attached as part of the **b**uild**i**ng or structure, unless held for sale by you, caused by or resulting from theft;

   c. property that is missing, where the only evidence of the loss or **d**amage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property;

   d. gutters and downspouts caused by or resulting from weight of snow, ice or sleet;

   e. property that has been transferred to any entity or to a place outside the described premises on the basis of unauthorized instructions; or

   f. outdoor radio or television antennas, including their lead-in wiring, masts or towers when **d**amage is caused by windstorm, hail, rain, sleet, snow, ice or weight of ice.

2. For **d**amage by theft, the following types of property are covered only up to the limits shown:

   a. $2,500 for furs, fur garments, or garments trimmed with fur;

   b. $25,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item;

   c. $250 for stamps, tickets and letters of credit.

3. For **d**amage by rain, snow, ice or sleet to personal property in the open, we will pay up to a maximum of $10,000.

III. **LIM**ITS OF INSU**RA**NCE

A. The most we will pay for **d**amage in any one event is the applicable limits of insurance shown on the Declarations.

**B.** Unless otherwise indicated, the limits of insurance applicable to the covered related expenses are in addition to the limits of insurance shown on the Declarations. Payments under the following Covered Related Expenses will not increase the applicable limit of insurance:

1. preservation of property; or

2. debris removal; but if:

   a. the sum of direct physical damage and debris removal expense exceeds the limit of insurance; or

   b. the debris removal expense exceeds the amount payable under the 25% debris removal for covered related expenses;

   we will pay up to an additional $25,000 for each location in any one event.

3. as respects practice income and rents the following will not increase the limit of insurance:

   a. alterations and new buildings;

   b. civil authority; and

   c. expense to reduce damage.

**C. Deductible**

We will not pay for damage to your building or your blanket dental practice personal property in any one event until the amount of damage exceeds the deductible shown on the Declarations. We will then pay the amount of damage in excess of the deductible, up to the applicable limit of insurance.

**D. Inflation Guard**

1. The limit of insurance for building and blanket dental practice personal property to which this coverage applies will automatically increase by the quarterly percentage shown on the Declarations.

2. The amount of increase will be:

   a. the most recent limit of insurance exclusive of this coverage; multiplied by

   b. the percentage of quarterly increase shown on the Declarations applied pro rata during each year.

**E. Valuation**

We will determine the value of covered property in the event of damage as follows:

1. **Building:** Your **Blanket Dental Practice Personal Property:**

   a. On the basis of replacement cost, without deduction for depreciation.

   b. This valuation does not apply to:

      1) property of others;

      2) contents of a residence;

      3) manuscripts;

      4) fine arts;

      5) outdoor equipment or outdoor furniture; or

6) stock.

c. You may make a claim for damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the damage.

d. We will not pay on a replacement cost basis for any damage:

1) until the damaged property is actually repaired or replaced; and

2) unless the repairs or replacement are made as soon as reasonably possible after the damage.

These requirements do not apply when damages are $10,000 or less.

e. We will not pay more for damage on a replacement cost basis than the least of:

1) the limit of insurance applicable to the damaged property; or

2) the cost to replace, on the same premises, the damaged property with other property:

a) of comparable material and quality; and

b) used for the same purpose; or

3) the amount you actually spend that is necessary to repair or replace the damaged property.

2. Stock you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

3. Glass at the cost of replacement with safety glazing material if required by law.

4. Tenant's improvements and betterments at:

a. replacement cost of the damaged property if you make repairs promptly;

b. a proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

1) multiply the original cost by the number of days from the damage to the expiration of the lease; and

2) divide the amount determined in 1) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

c. nothing if others pay for repairs or replacement.

5. Valuable papers and records, including those which exist on electronic media and records, other than prepackaged software programs, at the cost of:

a. blank materials for reproducing the records; and

b. labor to transcribe or copy the records when there is a duplicate.

6. Practice Income

a. Actual Loss Sustained - If your practice is suspended due to physical damage at the described premises or power failure as described under Paragraph I.B.8., we will pay for the actual loss of practice income you sustain in accordance with Paragraph I.A.3. unless a Valued Daily Limit is shown on the Declarations. If a Valued Daily Limit is shown on the Declarations, practice income will be valued in accordance with Paragraph III.F.6.b. below.

b. Valued Daily Limit - If your practice is suspended due to physical damage at the described premises or power failure as described under Paragraph I.B.8., we will pay up to the number of days shown on the Declarations:

1) the limit per day shown on the Declarations if your practice is totally suspended; or

2) the proportion of the limit per day if your practice is partially suspended. This proportion shall be calculated as the ratio of reduced practice hours compared to normal practice hours.

A day means a period of 24 hours, beginning at 12:01 A.M. and during which your practice was or would be conducted.

c. Even if a Valued Daily Limit applies, you may alternatively make a claim for practice income covered by this insurance on an actual loss sustained basis during the period of restoration in accordance with Condition V.J.7.

7. Rents or other income at actual loss sustained. Consideration will be given to the experience before the loss and the probable experience had no loss occurred.

8. At actual cash value as of the time of damage, except as provided above.

## IV.  DEFINITIONS

"Accounts Receivable Records" means:

A. all sums due you from customers, provided you are unable to effect collection;

B. interest charges on any loan to offset impaired collections pending repayment of such amounts made uncollectible by damage;

C. collection expenses in excess of normal collection cost made necessary because of damage; and

D. other reasonable expenses incurred by you in re-establishing records of accounts receivable following such damage.

"Blanket Dental Practice Personal Property" means property other than buildings, consisting of the following:

A. furniture and fixtures;

B. machinery and equipment;

C. stock;

D. all other personal property owned by you and used in your practice;

E. labor, materials or services furnished or arranged by you on personal property of others; and

F. your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

1. Made a part of the building you occupy but do not own; and

2. You acquired or made at your expense but cannot legally remove.

**"Building"** means the building or structure described on the Declarations, including:

**A**.  completed additions;

**B**.  permanently installed;

  1.  fences, fixtures;

  2.  machinery; and

  3.  equipment;

  4.  radio and television antennas and satellites including lead-in wiring and masts.

C.  outdoor fixtures;

**D**.  an appurtenant structure for up to 10 percent of the **building** limit;

E.  Personal property owned by you that is used to maintain or service the **building** or its premises, including:

  1.  fire extinguishing equipment;

  2.  outdoor furniture;

  3.  floor coverings; and

  4.  appliances used for refrigerating, ventilating, cooking, dishwashing or laundering; and

F.  If not covered by other insurance:

  1.  additions under construction, alterations and repairs to the **building**;

  2.  materials, equipment, supplies and temporary structures, on or within 1000 feet of the described premises, used for making additions, alterations or repairs to the **building**.

**"Computer Fraud"** means theft of property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the premises described on the Declaration to a person or place outside those premises.

**"Covered Causes of Loss"** means ALL RISK OF DIRECT PHYSICAL LOSS except as excluded or limited in Section II. of this Coverage Part.  ALL RISK OF DIRECT PHYSICAL LOSS shall also include the following:

**A**.  Collapse

  1.  We will pay for **d**amage caused by or resulting from collapse of a **building** or any of its parts caused only by one or more of the following:

    a.  the specifie**d** causes of **l**oss or breakage of **building** glass, all only as insured against in this Coverage Part;

    **b**.  hidden decay;

    c.  hidden insect or vermin **d**amage;

    **d**.  weight of people or personal property;

    e.  weight of rain that collects on a roof; and

      f.   use of defective material or methods in construction, remodeling or renovation if the collapse happens during the course of the construction, remodeling or renovation.

2.   We will not pay for **d**amage to the following types of property unless the **d**amage is a direct result of the collapse of a **b**ui**ldi**ng;

      a.   outdoor radio or television antennas, including their lead-in wiring, masts or towers;

      **b**.   awnings; gutters and downspouts;

      c.   yard fixtures, outdoor swimming pools;

      **d**.   fences; piers, wharves and docks; beach or diving platforms or appurtenances; or

      e.   retaining walls; walks, roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinkage, bulging or expansion, nor shall this coverage increase the limits of insurance of this Coverage Part.

**B**.  Wat**e**r **D**amage

If **d**amage caused by or resulting from covered wat**e**r **d**amage or other liquid, solder, powder or molten material **d**amage happens, we will also pay the cost to tear out and replace any part of the **b**ui**ldi**ng to repair **d**amage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the **d**amage; but we will pay the cost to repair or replace **d**amage**d** parts of fire extinguishing equipment if the **d**amage:

1.   results in discharge of any substance from an automatic fire protection system; or

2.   is directly caused by freezing.

**"D**amage**"** means partial or total loss of or damage to you**r** covered property.

**"D**epen**d**ent Prope**r**ty**"** means property operated by others whom you depend on to:

**A**.  deliver materials or services (other than water supply services, communication supply services or power supply services) to you or to others for you**r** account;

**B**.  accept you**r** products or services;

**C**.  manufacture products for delivery to you**r** customers under contract of sale; or

**D**.  attract customers to you**r** business.

**"E**lect**r**onic **M**ed**i**a an**d R**eco**rd**s**"** means:

**A**.  electronic data processing, recording or storage media such as films, tapes, discs, drums or cells.

**B**.  data stored on such media; or

**C**.  programming records used for electronically controlled equipment.

**"E**l**e**vato**r"** means a hoisting or lowering device to connect floor or landings. It may or may not be in service. It may consist of several parts, such as: a car or platform; a shaft, hoistway, stairway, or runway; power equipment and machinery. For the purpose of this Coverage Part, **e**levato**r** does not include:

**A**.  an auto servicing hoist;

**B**.  a hoist without a platform outside a **b**ui**ld**ing, which does not have mechanical power or is not attached to a

**build**ing wall;

C. any hod or material hoist used in construction operations;

**D**. an inclined conveyor used exclusively for carrying property; or

E. a dumbwaiter used exclusively for carrying property and having a compartment height of 4 or less feet.

**"Falling Objects"** means **d**amage to the interior of a **build**ing or property inside provided that the roof or an outside wall of the **build**ing is first **d**amage**d** by a fa**ll**ing ob**j**ect.  Falling ob**j**ects does not include damage to:

**A**. personal property in the open; or

**B**. the interior of a **build**ing, or property inside a **build**ing, unless the roof or an outside wall of the **build**ing is first **d**amage**d** by a fa**ll**ing ob**j**ect.

**"Fine Arts"** means paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, porcelains and bric-a-brac, art glass windows and other bona fide works of art or rarity, historical value or artistic merit.

**"Finishe**d Stock**"** means stock you have manufactured.

**"Perio**d of **R**est**or**at**i**on**"** means the period of time that:

**A**. begins 24 hours immediately following direct physical **d**amage or power failure as described under Paragraph I.**B**.8. caused by or resulting from any cov**ere**d cause of **l**oss at the described premises or power failure as described in Paragraph I.**B**.8.; and

**B**. ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

Perio**d** of **r**est**or**at**i**on does not include any increased period required due to the enforcement of any ordinance or law that:

1. regulates the construction, use or repair, or requires the tearing down of any property; or

2. requires you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of po**ll**utants.

The expiration date of this policy will not cut short the p**er**io**d** of **r**est**or**at**i**on.

**"P**ract**i**ce Income**"** means the:

**A**. net income, meaning net profit or loss before income taxes, that would have been earned or incurred; and

**B**. continuing normal operating expenses, including payroll.

**"R**ents**"** or other income means the sum of:

**A**. gross income from the described property;

**B**. the amount of all charges assumed by the tenants which would otherwise be you**r** obligations; and

**C**. rental value of that portion occupied by you or vacant portions that would have been rented had no **d**amage occurred.

**"Sinkhole Co**ll**apse"** means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of **d**amage does not include:

**A**. the cost of filling sinkholes; or

**B**. sinking or collapse of land into man-made underground cavities.

**"Specified Causes of Loss"** means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects: weight of snow, ice or sleet; water damage.

**"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**"Valuable Papers and Records"** means written, printed or otherwise inscribed documents and records including books, maps, films, drawings, abstracts, deeds, mortgages, manuscripts, x-ray negatives and prints and patient's charts.

**"Volcanic action"** means direct damage resulting from the eruption of a volcano when the damage is caused by:

**A**.   airborne volcanic blast or airborne shock waves;

**B**.   ash, dust or particulate matter; or

C.   lava flow.

All volcanic eruptions that happen within any 168- hour period will constitute a single event.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical damage to the described property.

**"Water Damage"** means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

V.   CONDITIONS

The following Conditions apply in addition to the Common Policy Conditions.

**A**.   Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of damage, the breach of condition does not exist.

**B**.   Legal Action Against Us

The following is added to the Common Policy Conditions:

No one may bring a legal action against us under this Coverage Part unless the action is brought within:

6 Years in South Dakota;

5 Years in Florida or Kansas;

4 Years in Wyoming;

3 Years in Maryland, North Carolina, North Dakota or Utah; or

2 Years in all other States;

after the date on which the direct physical damage happened.

C. **Liberalization**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**D.** No **B**enefits To **B**ailee

No entity, other than you, having custody of Covered Property will benefit from this insurance.

E. Other Insurance

1.   You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered **d**amage. Our share is the proportion that the applicable limit of insurance under this Coverage Part bears to the limits of insurance of all insurance covering on the same basis.

2.   If there is other insurance covering the same **d**amage, other than that described in 1. above, we will pay only for the amount of covered **d**amage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable limit of insurance.

F. Waiver of **R**ights of **R**ecovery

You may waive you**r** rights against another party in writing:

1.   prior to **d**amage to you**r** covered property or covered income.

2.   after **d**amage to you**r** covered property or covered income only if, at the time of **d**amage, that party is one of the following:

a.   someone insured by this insurance;

**b**.   a Business;

1)   owned or controlled by you; or

2)   that owns or controls you; or

3) you**r** tenant.

This will not restrict you**r** insurance.

G. **Ab**and**o**nment

There can be no abandonment of any property to us.

H. **A**pprais**a**l

If we and you disagree on the value of the property, the amount of net income and operating expense, or the amount of **d**amage, either may make written demand for an appraisal of the **d**amage. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of **d**amage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1.   pay its chosen appraiser; and

2.   bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

I.   **D**uties In The Event Of **D**amage

You must see that the following are done in the event of **d**amage to covered property:

1. Notify the police if a law may have been broken.

2. Give us prompt written notice of the **d**amage. Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the **d**amage happened.

4. Take all reasonable steps to protect the covered property from further **d**amage by a cove**red** cause of **lo**ss. If feasible, set the **d**amage**d** property aside and in the best possible order for examination. Also keep a record of you**r** expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the limit of insurance.

5. At our request, give us complete inventories of the **d**amage**d** and undamaged property. Include quantities, costs, values and amount of **d**amage claimed.

6. Permit us to inspect the property and records proving the **d**amage. Also permit us to take samples of **d**amage**d** property for inspection, testing and analysis.

7. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or you**r** claim, including you**r** books and records. In such event, you**r** answers must be signed.

8. Send us a signed, sworn statement of **d**amage containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Cooperate with us in the investigation or settlement of the claim.

10. Resume all or part of you**r** practice as quickly as possible.

J.   Payment fo**r D**amage

1. In the event of **d**amage covered by this Coverage Part, at our option we will either:

   a. pay the value of **d**amage**d** property;

   **b**. pay the cost of repairing or replacing the **d**amage**d** property;

   c. take all or any part of the property at an agreed or appraised value; or

   **d**. Repair, rebuild or replace the property with other property of like kind and quality.

2. We will give notice of our intentions within 30 days after we receive the sworn statement of **d**amage.

3. We will not pay you more than you**r** financial interest in the Covered Property.

4. We may adjust **d**amages with the owners of **d**amage**d** property if other than you. If we pay the owners, such payments will satisfy you**r** claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

5. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

6. We will pay for covered **d**amage within 30 days after we receive the sworn statement of **d**amage if:

a. you have complied with all of the terms of this Coverage Part; and

b. we have reached agreement with you on the amount of **d**amage, or an appraisal award has been made.

7. The amount of **p**ractice income loss will be determined based on:

a. the net income of the practice before the direct physical **d**amage happened;

b. the likely net income of the practice if no **d**amage happened;

c. the operating expenses, including payroll expenses, necessary to resume you**r** practice with the same quality of service that existed just before the direct physical **d**amage; and

d. other relevant sources of information, including:

1) you**r** financial records and accounting procedures;

2) bills, invoices and other vouchers; and

3) deeds, liens or contracts.

We will reduce the amount of you**r** **p**ractice income recovery by any amounts paid to you, or to the extent you can resume you**r** practice, in whole or in part, by using **d**amaged or undamaged property, including merchandise or stock, at the described premises or elsewhere.

We will not pay for any loss of **p**ractice income caused by direct physical **d**amage to e**l**ect**r**onic me**d**ia and records after the longer of:

a. 90 consecutive days from the date of direct physical **d**amage; or

b. the period, beginning with the date of direct, physical **d**amage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described premises due to **d**amage caused by the same event.

8. If you sustain any **r**ents or other income reduction covered under this Coverage Part which exceeds the amount of coverage, all recoveries on account of the **d**amage, less the actual cost of recovery, shall be applied to the reimbursement of you to the extent of you**r** uninsured amount less the deductible amount.

K. **R**ecove**r**ed P**r**ope**r**ty

If either you or we recover any property after **d**amage settlement, that party must give the other prompt notice. At you**r** option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the limit of Insurance.

**L**. Vacancy

If the **b**ui**ld**ing where **d**amage happens has been vacant for more than 60 consecutive days before the **d**amage, we will:

1. not pay for any **d**amage caused by any of the following even if they are cove**r**ed causes of **l**oss:

a. vandalism;

b. sprinkler leakage, unless you have protected the system against freezing;

c. **b**ui**ld**ing glass breakage;

d. wate**r** **d**amage; or

    e.  actual or attempted theft;

2.  reduce the amount we would otherwise pay for the **d**amage by 15%.

A **b**uild**i**ng is vacant when it does not contain enough **b**lanket **d**ental **p**ractice pe**r**son**a**l **p**rope**r**ty to conduct customary practice, but **b**uild**i**ngs under construction are not considered vacant.

**M**.  **M**ortgage Ho**l**de**r**s

1.  The term "mortgage holder" includes:

    a.  any trustees;

    **b**.  the owner of the **b**uild**i**ng at the described premises which is leased or rented to you, but only during the time you are a tenant in that **b**uild**i**ng;

    c.  the owner of any equipment, materials or supplies which are leased to you, but only while at the described premises; and

    **d**.  any creditor with whom you have entered a contract for the sale of covered property whose interest is established by written contract.

2.  We will pay for covered **d**amage to covered property to each mortgage holder shown on the Declarations in their order of precedence, as interests may appear.

3.  The mortgage holder has the right to receive **d**amage payment even if the mortgage holder has started foreclosure or similar action on the covered property.

4.  If we deny you**r** claim because of you**r** acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive **d**amage payment if the mortgage holder:

    a.  pays any premium due under this Coverage Part at our request if you have failed to do so;

    **b**.  submits a signed, sworn statement of **d**amage within 60 days after receiving notice from us of you**r** failure to do so; and

    c.  has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

5.  If we pay the mortgage holder for any **d**amage and deny payment to you because of you**r** acts or because you have failed to comply with the terms of this Coverage Part:

    a.  the mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    **b**.  the mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, you**r** mortgage and note will be transferred to us and you will pay you**r** remaining mortgage debt to us.

6.  If we cancel this policy, we will give written notice to the mortgage holder at least:

    a.  10 days before the effective date of cancellation if we cancel for you**r** nonpayment of premium; or

**b**.   30 days before the effective date of cancellation if we cancel for any other reason.

7.   If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MINNESOTA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

    **COMMON POLICY CONDITIONS**

In consideration of the premium paid, the policy is modified as follows:

**I.**  In accordance with M.S. 72A.201, Subd. 12., we agree with **you** that if a judgment is entered against **you**, the principal amount of which is within the applicable policy limits, we are responsible for **your** share of costs, disbursements, and prejudgment interest included in the judgment, even if the total amount of the judgment is in excess of the applicable policy limits.

**II.**  The following **Common Policy Conditions** are amended as follows:

    **A.**  Section **III. YOUR DUTIES**, Paragraph **A.** is deleted in its entirety and replaced as follows:

        **A.**  notify us and **your** insurance agent as soon as possible;

    **B.**  Section **V. INSPECTIONS AND SURVEYS**, Paragraph **A.** is amended to read as follows:

        **A.**  make inspections and surveys at any time up to 12 months after this policy ends;

    **C.**  Section **VI. EXAMINATION OF YOUR BOOKS AND RECORDS** is deleted in its entirety and replaced as follows:

        **VI. EXAMINATION OF YOUR BOOKS AND RECORDS**

        We may examine and audit **your** books and records as they relate to this policy and/or any **claim** submitted under this policy, at any time during the policy period and up to 1 year afterward.

    **D.**  Section **IX. CONCEALMENT, MISREPRESENTATION, FRAUD** is deleted in its entirety and replaced as follows:

        **IX. CONCEALMENT, MISREPRESENTATION, FRAUD**

        If **you** knowingly conceal or misrepresent or have knowingly concealed or misrepresented any material fact or circumstance relating to this insurance or any **claim** thereunder, whether before or after a loss, then this policy may be cancelled in accordance with Minnesota law.

    **E.**  Section **XII. TRANSFER OF RIGHTS OF RECOVERY** is amended to include the following:

        We may not exercise this right if the **claim** is caused by **your** nonintentional act or proceed against an entity if they are insured for the same **claim** by the same company if the **claim** was caused by a nonintentional act.

    **F.**  Section **XVII. YOU RIGHT TO CLAIM INFORMATION**, the fourth paragraph is deleted and replaced with the following:

        If we cancel or elect not to renew this policy for any reason other than non-payment of premium, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information within 30 days of **your** request.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MINNESOTA AMENDATORY ENDORSEMENT
## GENERAL LIABILITY COVERAGE PART AND MEDICAL WASTE LEGAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

**GENERAL LIABILITY COVERAGE PART**
**MEDICAL WASTE LEGAL REIMBURSEMENT COVERAGE**

In consideration of the premium paid, the policy is modified as follows:

**I.**   We agree with **you** that the following amendment is made to the General Liability Coverage Part:

Section **II. <u>EXCLUSIONS</u>**, Paragraph **T.**, is amended to include the following:

This exclusion does not apply to **injury** or **damage** caused by heat, smoke or fumes from a **hostile fire**.

**II.**   We agree with you that the following amendment is made to the Medical Waste Legal Expense Reimbursement Coverage:

Section **D. YOUR DUTIES**, is amended to add the following:

Our insurance agent is authorized to receive written or oral notice of claim, and any notice given to our insurance agent is considered notice to us.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INSURED DENTISTS STATUS CHANGE - PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE PART DENTISTS/ORAL SURGEONS**

In consideration of the premium paid, the policy is modified as follows:

Insured Dentist:        Christie Jo Berkseth-Rojas DDS

A.   It is agreed that the **insured dentist** indicated above has represented to us that such **insured dentist** renders **professional services** on a **part time** basis, which representation will be subject to audit and verification by us. The **insured dentist** agrees to make available to us his or her work schedule, office schedule and other documentation necessary to confirm the **part time** status.

B.   In the event we return premium as a result of the change in the **insured dentist's** status from **full time** to **part time**, the **named insured** agrees to promptly refund such premium, or the appropriate portion thereof, to us should an audit disclose that **professional services** were regularly rendered by such **insured dentist** on a **full time** basis.

C.   Solely for the purposes of this endorsement, Section **IV. DEFINITIONS** is amended to include the following:

"**Full Time**" means more than 20 hours each and every week or more than the maximum aggregate of 1040 hours per year during the policy period.

"**Part Time**" means 20 hours or less each and every week or a maximum aggregate of 1040 hours per year during the policy period.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MINNESOTA AMENDATORY ENDORSEMENT
## PROFESSIONAL LIABILITY COVERAGE PART
## DENTISTS/ORAL SURGEONS CLAIMS MADE

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE PART DENTISTS/ORAL SURGEONS CLAIMS MADE**

In consideration of the premium paid, the policy is modified as follows:

1.  Section **I. COVERAGE AGREEMENTS**, the second paragraph is deleted and replaced as follows:

    The **dental incident** as described above must happen on or after the **prior acts date** and **claim** therefore must be first made either before the end of the policy period stated on the Declarations of this policy or during any optional **Extended Reporting Period**, if exercised by **you**.

2.  Section **V. EXTENDED REPORTING PERIOD**, Paragraph **A.**, **Termination** is deleted and replaced as follows:

    **A.  Termination**

    1.  If this policy is canceled or non-renewed by either us or by the **named insured** then the **named insured** shall have the right to purchase an **extended reporting period**. Such right must be exercised by the **named insured** within 60 days of the termination of the policy period by providing:

        **a.**  written notice to us; and

        **b.**  with the written notice, the amount of additional premium. The additional premium for the **extended reporting period** will be developed from the rules, rates, and rating plans in effect at the inception of the last policy period.

    2.  There is no right to any **extended reporting period** if we cancel or refuse to renew this policy due to non-payment of premiums.

3.  Section **VII. SPECIAL CONDITIONS**, Paragraph **B.**, **Your Duty**, is deleted and replaced as follows:

    **B.  Your Duty**

    A **claim** for **injury** or **damage** is considered first made when **you** first receive notice of the **claim**. The notice must be given to us immediately and

    1.  within the policy period or;

    2.  within 10 days after the policy expiration or termination or;

    3.  during any optional **Extended Reporting Period**, if exercised by **you**.

    All **claims** arising out of the same **dental incident** will be considered as having been made at the time the first **claim** is made.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MINNESOTA AMENDATORY ENDORSEMENT
## PROFESSIONAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE PART DENTISTS/ORAL SURGEONS**

In consideration of the premium paid, the policy is modified as follows:

**1.** Section **I. COVERAGE AGREEMENTS** is amended to include the following:

Any dispute resolution proceedings subject to the above shall take place in Minnesota.

**2.** Section **II. EXCLUSIONS**, Paragraph **K.** is amended to include the following:

This exclusion does not apply to **injury** or **damage** caused by heat, smoke or fumes from a **hostile fire**.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BILLING DISPUTES COVERAGE SUPPLEMENTAL ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE PART DENTISTS/ORAL SURGEONS**

In consideration of the premium paid, the policy is modified as follows:

| Each "Billing Dispute" Limit | Aggregate "Billing Dispute" Limit |
|---|---|
| $25,000 | $100,000 |

**I.** Section **I. COVERAGE AGREEMENTS** is amended to include the following:

In addition to the limits of liability and subject to a deductible amount of $250 per **billing dispute**, we will pay up to the **Billing Dispute** Limit shown above for billing **dispute expenses** incurred by any **named insured**.

In no event shall the amount payable under this endorsement exceed the Each **Billing Dispute Limit** and Aggregate **Billing Dispute** Limit shown above, regardless of the number of **named insureds** and regardless of the number of such **billing disputes**. More than one **billing dispute** against any **named insured** involving the same fact, circumstance, situation, transaction or event shall be considered as one **billing dispute** which shall be subject to the **Billing Dispute** Limit applicable to the earliest such **billing dispute** reported to us under this policy or under any prior policy of which this is a renewal or replacement.

Our total limit for all **billing dispute expenses** shall not exceed the **Billing Dispute** Limit stated as the Aggregate **Billing Dispute** Limit above.

In the event any **billing dispute expenses** are payable under this policy and any other policy or any renewal or replacement of such policy, or any policy which succeeds it in time, issued by us to any **named insured**, and such **billing dispute expenses** arise out of a **common billing dispute**, then such **billing dispute expenses** shall not exceed the highest applicable **Billing Dispute** Limit on any one applicable policy.

Payment of the highest **Billing Dispute** Limit offered on any one applicable policy shall extinguish our and any of our affiliate's liability on all such policies for all such **common billing disputes**. Nothing contained in this endorsement shall be construed to increase the **Billing Dispute** Limit of this policy.

Such **billing dispute** must begin during the policy period and must be reported to us during the policy period or within 30 days after the end of the policy period.

**II.** Section **IV. DEFINITIONS** is amended to include the following:

**"Billing dispute"** means any **regulatory authority** audit or investigation of any **named insured** seeking monetary amounts or injunctive relief in connection with any **named insured's** dental billing practices or procedures to a commercial payer or government health benefit payer. **Billing dispute** does not include:

**A.** disputes over timely completion of dental records;

**B.** any investigation that is covered by any other insurance;

**C.** any investigation involving enforcement of workers compensation or similar laws;

**D.** any application for initial placement on a dental staff or membership in any practice association, health maintenance organization or similar entity; or

**E.** customary or routine audits or reconciliation at the behest of a government or commercial payer.

"**Billing dispute expenses**" means those reasonable and necessary fees and expenses incurred by any **named insured** (including attorney fees charged by an attorney designated by us) in order to investigate, settle or defend any **billing dispute**. **Billing dispute expenses** do not include:

**A.** expenses incurred in defense of criminal proceedings;

**B.** return or restitution of fees, profits, charges or benefit payments to any commercial or government health benefit payer or program;

**C.** costs associated with implementation of any corporate integrity program or compliance program or required modifications in business operations or procedures including any programs or modifications mandated as a result of a **billing dispute** investigation; or

**D.** any defense coverage in connection with any state or regulatory civil investigation afforded elsewhere under this Policy.

"**Common billing dispute**" means any **billing dispute** that (i) is submitted for payment under this policy and any other policy issued by us (or any renewal or replacement of such policy or any policy which succeeds it in time) to any **named insured** and (ii) that is logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

"**Regulatory authority**" as used within this endorsement means any Federal, state or local regulatory agency, hospital, health maintenance organization or other entity with authority to regulate the **named insured's** professional conduct or to suspend or revoke any **named insured's** staff or membership privileges or professional license in conformance with applicable Federal statutes.

**III.** Section **IV. DEFINITIONS,** the definition of **Claim,** is amended to add the following:

**Claim** does not include **a billing dispute** or any notice of a **billing dispute**.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMEND DENTIST'S ELECTRONIC EQUIPMENT COVERAGE

(For Use With FLOOD OR OTHER WATER DAMAGE COVERAGE ENDORSEMENT, EARTHQUAKE ENDORSEMENT, And DENTIST'S EQUIPMENT BREAKDOWN COVERAGE)

This endorsement modifies insurance provided under the following:

**BUILDING, BLANKET DENTAL PRACTICE PERSONAL PROPERTY AND INCOME COVERAGE PART**

In consideration of the premium charged, the Policy is modified as follows:

**A.** Section I. COVERAGE AGREEMENTS, Paragraph **B**.16. is deleted in its entirety and replaced as follows:

16. Dentist's Electronic Equipment

We will pay for direct damage to covered dentist's electronic equipment (including extra expense), located on or within 1000 feet of the described premises, caused by or resulting from a covered electronic equipment cause of loss as defined below. The most we will pay for damage and extra expense covered by this covered related expense is $50,000. This amount is part of and not in addition to the Limit of Insurance for Blanket Dental Practice Personal Property shown in the Declarations.

For purposes of this coverage, dentist's electronic equipment means any electronic dental equipment, computers, dental chair, x-ray equipment or other components capable of accepting information, processing it according to a plan and producing the desired results. This includes any telephone components or equipment, telephone switchgear, operating programs, related software, facsimile transmission equipment, telex equipment and other related hardware used for the transmission of communications. It also includes software for electronic data processing, recording or storage media such as films, tapes, cards, discs, drums or cells.

Covered electronic equipment cause of loss means risk of direct physical loss to dentist's electronic equipment except as excluded or limited below. The covered electronic equipment cause of loss also includes electrical disturbance.

We will not pay for loss or damage caused by or resulting from the exclusions as indicated below. Only the following exclusions as stated in this Coverage Part, Section II. EXCLUSIONS apply to dentist's electronic equipment:

a. Exclusion **A**.4., Governmental Action;

**b**. Exclusion **A**.5., Nuclear Hazard;

c. Exclusion **A**.6., War And Military Action;

**d**. Exclusion **B**.2., Delay, loss of use or loss of market;

e. Exclusion **B**.4., Wear and tear;

f. Exclusion **B**.5., Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

g. Exclusion **B**.7., seepage, migration, escape, release, discharge or dispersal of contaminants or pollutants unless the seepage, migration, escape, release, discharge or dispersal is itself caused by any of the specified causes of loss. But if damage by the specified causes of loss results, we will pay for the resulting damage by the specified causes of loss;

    h.  Exclusion **B**.13., dishonest or criminal acts, by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

        i.  acting alone or with others; or

        ii.  whether or not happening during the hours of employment.

    This exclusion shall not apply to acts of destruction by your employees, but theft by employees is not covered.

The following additional exclusions shall also apply:

i.  Depreciation, obsolescence, dampness or dryness, cold or heat or any other cause of consequential loss or damage;

j.  Errors or omissions in machine programming or incorrect instructions to a machine;

k.  Errors or omissions or deficiencies in design, specification, materials or workmanship.

For purposes of this coverage electrical disturbance means electrical injury, magnetic injury, disturbance of electronic recordings or erasure of electronic recordings including damage caused by interruption of an electrical power supply, power surge, blackout or brownout.

The most we will pay for practice income as provided elsewhere in this Coverage Part for loss or damage covered by this covered related expense is $2,500. This is part of and not in addition to the $50,000 limit stated above for this coverage.

**B.**  If DENTIST'S EQUIPMENT BREAKDOWN COVERAGE, form ASPDTPR005, is attached to this Policy, we will not pay for loss or damage provided under Section 16. Dentist's Electronic Equipment caused by or resulting from the following:

    a.  mechanical breakdown, including rupture or bursting caused by centrifugal force;

    **b.**  artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

    c.  explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

    **d.**  loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

    e.  loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**C.**  If the FLOOD OR OTHER WATER DAMAGE COVERAGE ENDORSEMENT, form ASPDTPR007, is attached to this Policy, we will not pay for loss or damage under Section 16. Dentist's Electronic Equipment cause by or resulting from:

    a.  Exclusion A.7., Water; and

    **b.**  Flood or Other Water Damage as defined in the FLOOD OR OTHER WATER DAMAGE COVERAGE ENDORSEMENT.

**D.**  If EARTHQUAKE AND VOLCANIC ERUPTION ENDORSENENT, form ASPDTPR002, is attached to this Policy, we will not pay for loss or **damage** under Section **16.** Dentist's Electronic Equipment cause by or resulting from:

     **a.**  Exclusion **A.2.**, Earth Movement; and

     **b.**  Exclusion **A.3.**, Volcanic Eruption.

All other provisions of this policy remain unchanged.

THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER: D006449-03

Issued by: Aspen American Insurance Company

Issued to: Christie Jo Berkseth-Rojas DDS

Effective date: 12/06/2019

# PROFESSIONAL PROTECTOR PLAN®
## FOR DENTISTS

*50 YEARS*

800.922.5694
ppp@bbprograms.com
www.protectorplan.com

# PPP Claims Contacts

## PROFESSIONAL & GENERAL LIABILITY CLAIM REPORTING

Professional and General Liability Claims can be reported to **Protect Professionals Claims Management**.

- Email: pppreports@bbprograms.com
- FAX: 1-888-239-2663
- Telephone: 1-833-450-8608

## RISK MANAGEMENT HOTLINE

The **PPP Risk Management Hotline** provides a method for AAIC insureds to pose clinical questions and get a response from an experienced risk management consultant.

- Telephone: 1-844-747-8543

## PROPERTY CLAIM REPORTING

All claims assignments for the AAIC B&B Dental Program, regardless of severity or location, should be reported to the **YORK Claims Intake Center**.

- Email: 8211ASBD@yorkrsg.com
- FAX: 1-800-393-8104
- Telephone: 1-877-434-3968
- Web: http://firstreport.yorkrsg.com

## EPL HOTLINE

The **HR/Advantage Hotline** offers human resource support and legal advice in a joint effort between the Professional Protector Plan for Dentists and AAIC with Clark Hill PLC.

- Telephone: 1-855-472-6277



**Underwritten by AAIC**

*Aspen American Insurance Company ("AAIC") is a subsidiary of Aspen Insurance Holdings Limited.*

# PROFESSIONAL PROTECTOR PLAN®
## FOR DENTISTS

**PPP**

**USI**
**Attention: Mary Genosky, CISR**
**8000 Norman Center Drive Suite 400**
**Bloomington, MN 55437**
**Ph: 610-619-5602**
**Email: mary.genosky@usi.com**

DATE: **OCTOBER 04, 2019**

POLICY NO: **D006449-03**
POLICY EFFECTIVE  DATE: **12/06/2019**

NAME    Christie Jo Berkseth-Rojas DDS
3455 4th  Ave S
Minneapolis, MN 55408

| Coverages / Services | |
|---|---|
| ➢ **Professional Liability Coverage** | **$500** |
| ➢ **General Liability Coverage** | **$168** |
| ➢ **Property Coverage** | **$664** |
| ➢ **Black Bag Coverage** | **$0** |
| ➢ **EPL** | **$60** |
| ➢ **Basic Cyber** | **Included** |
| ➢ **Risk Management Services** | **$50** |
| ➢ **Taxes and Surcharges** | **$12.22** |
| Total Amount Due:  **$1,454.22** | |