IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHRISTIE JO BERKSETH-ROJAS DDS, individually and on behalf of all others similarly situated, § § § § <br><br> Plaintiff, § § <br> § Civil Action No. 3:20-CV-0948-D <br> VS. § § <br> ASPEN AMERICAN INSURANCE COMPANY, § § § § <br> Defendant. § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to dismiss under Fed. R. Civ. P. 12(b)(6) presents the question whether plaintiff, a dentist, has plausibly pleaded a breach of contract or declaratory judgment claim based on an insurer's failure to cover COVID-19 virus-based losses under an "all risk" commercial property insurance policy that requires direct physical damage or loss to property. Concluding that she has not, the court grants the insurer's motion to dismiss and also grants plaintiff leave to replead.

I

This is an action by plaintiff Christie Jo Berkseth-Rojas DDS ("Dr. Berkseth-Rojas")[1] against defendant Aspen American Insurance Company ("Aspen") arising from Aspen's denial of business interruption insurance coverage for losses Dr. Berkseth-Rojas alleges she

---

[1] Dr. Berkseth-Rojas has also filed a motion to certify a class of plaintiffs similarly situated to her. This motion remains pending.

has suffered to her dental practice due to the COVID-19[2] pandemic. Dr. Berkseth-Rojas purchased an "all risk" commercial property insurance policy (the "Policy") from Aspen that insured her Minneapolis, Minnesota dental practice for certain losses for the period December 6, 2019 to December 6, 2020.

According to her first amended complaint,[3] on March 19, 2020 the Governor of the State of Minnesota issued an executive order that "all non-essential or elective surgeries and procedures, including non-emerg[ency] or elective dental care, that utilize PPE or ventilators must be postponed indefinitely." Am. Compl. ¶ 42 (internal quotation marks omitted; brackets in original). Dr. Berkseth-Rojas alleges that the presence of COVID-19 and this and similar executive orders (the "Orders") caused her to lose practice income and incur extra expenses covered by the Policy, such as the cost of installing a sneeze-guard plexiglass shield in the reception area. She provided a notice of a claim under the Policy to Aspen on March 27, 2020. On the same day, Aspen denied the claim.

Shortly thereafter, Dr. Berkseth-Rojas filed this lawsuit, alleging claims for breach of contract and seeking a declaratory judgment that the Policy covers her business losses due

---

[2] I.e., "coronavirus" or "SARS-CoV-2."

[3] In deciding Aspen's Rule 12(b)(6) motion, the court construes the first amended complaint in the light most favorable to Dr. Berkseth-Rojas, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

to the COVID-19 pandemic and executive orders.[4] Aspen moves to dismiss the suit under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Inc.*, 855 F.Supp.2d 615, 618 (N.D. Tex.2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive Aspen's motion to dismiss under Rule 12(b)(6), Dr. Berkseth-Rojas must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the

---

[4]The first amended complaint alleges eight counts. The four breach of contract counts (counts I-IV) are based, respectively, on the Practice Income, Civil Authority, Extra Expense, and Sue and Labor provisions. Each breach of contract claim has a corresponding declaratory judgment claim (counts V-VIII) based on the same provision.

- 3 -

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

### III

The court turns first to Dr. Berkseth-Rojas's claims for breach of the Policy.[5]

### A

Dr. Berkseth-Rojas alleges that she has suffered covered business losses due to (1) the presence or spread of the COVID-19 virus generally and (2) the Orders prohibiting full operation of her dental practice. She avers that these are covered causes of loss that trigger Policy coverage under (1) the Practice Income provision, (2) the Extra Expense provision, (3) the Civil Authority provision, and (4) the Sue and Labor provision. Dr. Berkseth-Rojas asserts that the following are covered causes of loss: "[b]ecause of the spread or presence of COVID-19, the air in Plaintiff's property has become unsafe, necessitating repairs such as the installation of a sneeze-guard plexiglass shield at the reception to protect patients and staff." Am. Compl. ¶ 53.

> In addition, the functional space in the building has been diminished by the spread or presence of COVID-19. For example, the waiting room and reception area have lost their normal functionality and their space has been diminished. Plaintiff has instituted measures to repair the physical loss or damage such as requiring patients to wait in their cars until called or texted by staff, allowing only one person in the

---

[5]These claims are alleged in counts I-IV, based, respectively, on the Practice Income, Civil Authority, Extra Expense, and Sue and Labor provisions.

- 4 -

> reception area at a time, and preventing adult patients from being accompanied.

*Id.* at ¶ 54. "The [Orders] . . . prohibited access to Plaintiff's and the other Class member's Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss." *Id.* at ¶ 55.

Aspen maintains that Dr. Berkseth-Rojas has not alleged a covered loss within the scope of the Policy under any of the provisions she claims. It contends that, under the Practice Income, Extra Expense, Civil Authority, and Sue and Labor provisions of the Policy, coverage is only triggered by direct physical damage or loss to the dental practice; likewise, direct physical damage or loss to property other than the dental practice is required to trigger coverage under the Civil Authority provision. Aspen contends that, to sufficiently allege that any Policy provision applies, Dr. Berkseth-Rojas must assert that there has been direct physical damage or loss to some property. Aspen further maintains that, under Minnesota law, direct physical damage or loss means tangible, discernible alteration of insured property, not merely loss of use or functional impairment of property. *See* D. Mot. at 10-11 (citing *Pentair, Inc. v. Am. Guarantee & Liability Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (rejecting argument that "direct physical loss or damage is established whenever property cannot be used for its intended purpose"); *Source Food Tech., Inc. v. U.S. Fid. & Guarantee Co.*, 465 F.3d 834, 836 (8th Cir. 2006) (rejecting argument that losses due to government regulation are direct physical losses to property)). On this point, Aspen notes that Dr. Berkseth-Rojas alleges that "the air in [her] property has become unsafe" and that "functional

space in [her] building has been diminished by the spread or presence of COVID-19." Am. Compl. ¶¶ 53-54.  According to Aspen, Dr. Berkseth-Rojas has not plausibly alleged that COVID-19 was ever present in her building or that it damaged or altered any property. Rather, Aspen maintains that any loss Dr. Berkseth-Rojas has suffered is due to the COVID-19 pandemic generally and the related Orders.

Dr. Berkseth-Rojas responds that structural alteration is not required to show "direct physical loss or damage" under the Policy, and that physical loss may exist even if the structure of property remains unchanged.  P. Resp. at 8.  Quoting *General Mills, Inc. v. Gold Medal Insurance Co.*, 622 N.W. 2d 147, 152 (Minn. Ct. App. 2001), she maintains that, under Minnesota law, "'it is sufficient [to allege direct physical loss] to show that insured property is injured in some way.'" *Id.* (quoting *Gen. Mills, Inc.*, 622 N.W.2d at 152).  Dr. Berkseth-Rojas argues that "loss" must be interpreted differently from "damage" to avoid rendering Policy terms meaningless.  She posits that the presence and threat of COVID-19 physically alters the environment "by rendering a premises dangerous to human health."  P. Resp. at 11.  And she cites a number of cases in which the court found direct physical loss or damage due to contamination or infestation of harmful, unseen agents like these: salmonella (citing *Netherlands Insurance Co. v. Main St. Ingredients, LLC*, 745 F.3d 909, 916-17 (8th Cir. 2014)); asbestos (citing *Sentinel Management Co. v. New Hampshire Insurance Co.*, 563 N.W.2d 296, 299 (Minn. Ct. App. 1997)); lead particles (citing *Stack Metallurgical Services, Inc. v. Travelers Indemnity Co. of Connecticut*, 2007 WL 464715, at *6-9 (D. Or. 2007)); mold (citing *Prudential Property & Casualty Insurance Co. v.*

- 6 -

*Lillard-Roberts*, 2002 WL 31495830, at *8 (D. Or. 2002)); smoke (citing *Oregon Shakespeare Festival Association v. Great American Ins. Co.*, 2016 WL 3267247, at *9 (D. Or. 2016), *vacated by stipulation*, 2017 WL 1034203 (D. Or. 2017)); and ammonia gas (citing *Gregory Packaging, Inc. v. Travelers Property Casualty Co.*, 2014 WL 6675934, at *3, *6 (D.N.J. 2014)). Relying on the following allegations, Dr. Berkseth-Rojas asserts that her property suffered tangible, discernible alteration due to COVID-19: "COVID-19 impaired her family dental office and made the property unusable in the way it had been used before," Am. Compl. ¶ 9; "[she] is unable to use her interior space in the way she had previously used that space" because "[t]he probability of illness prevents the use of the property," *id.* at ¶ 12; she had to "drastically reduce operations at her office, and even to close entirely," because "[t]o do anything else would lead to the emergence or reemergence of COVID-19 at the property," *id.* at ¶ 10; "the air in [her] property has become unsafe, necessitating repairs," *id.* at ¶ 53; and "the functional space in the building has been diminished by the spread of COVID-19," *id.* at ¶ 54.

Finally, Dr. Berkseth-Rojas argues that the presence or suspected presence of COVID-19 makes it too dangerous to use her property as it was designed to be used. She maintains that she had to reduce her operations and could not perform her business as usual because that could cause the "emergence or reemergence of COVID-[19] at the property." D. Resp. at 17.

Aspen maintains that Dr. Berkseth-Rojas essentially seeks coverage not for physical loss or damage to her property, but for loss due to her inability to fully use her property for

its intended purpose. It points to her allegations that she is "unable to use her interior space in the way she had previously used that space," D. Reply at 3 (quoting Am. Compl. ¶ 12), and argues that, under Minnesota law, loss of intended use does not trigger coverage under the Policy. According to Aspen, "physical loss" means permanent dispossession of property, not impaired use of property. Regarding physical damage, Aspen maintains that Dr. Berkseth-Rojas has not alleged any infestation by a harmful agent; instead, she only speculates generally that "the air in [her] property has become unsafe," Am. Compl.¶ 9, and that the "probability of illness prevents the use of [the] property," Am. Compl. ¶ 53. Aspen further complains that Dr. Berkseth-Rojas has failed to address *Seifert v. IMT Insurance Co.*, ___ F.Supp.3d ___, 2020 WL 6120002 (D. Minn. Oct. 16, 2020), in which a Minnesota district court dismissed a complaint like hers for the reasons adduced by Aspen, and she relies instead on cases decided by a federal court in Missouri under Missouri law.[6]

B

The parties agree that Dr. Berkseth-Rojas' claims are governed by Minnesota law. Under Minnesota law, "the interpretation of an insurance contract is a question of law." *Seifert*, 2020 WL 6120002, at *2 (citation omitted). If the language of an insurance policy is clear and unambiguous, courts must enforce it as written. *Selective Ins. Co. of Am. v. Cmty. Living Options, Inc.*, 2019 WL 4011335, at *2 (D. Minn. 2019). The policy should be construed as a whole, giving effect to each contract term and provision. *Sherwin-Williams*

---

[6]Dr. Berkseth-Rojas filed a notice of supplemental authority on December 2, 2020. This notice relies as well on decisions of non-Minnesota courts.

- 8 -

*Co. v. Beazley Ins. Co., Inc.*, 2020 WL 4226866, at *3 (D. Minn. 2020). It is the insured's burden to demonstrate that coverage exists, and it is the insurer's burden to establish that any exclusion applies. *Midwest Family Mut. Ins. Co. v. Justkyle, Inc.*, 2018 WL 3475486, at *6 (D. Minn. 2018).

C

The Policy is an "all risk" policy that provides coverage "for all direct physical damage"—except for damage that is expressly excluded—"caused by or resulting from any covered cause of loss." P. Am. Compl. Supp. at 50 (bold font omitted). "Covered cause of loss" is defined as "ALL RISK OF DIRECT PHYSICAL LOSS" except as expressly excluded by the Policy. *Id.* at 67.

Dr. Berkseth-Rojas seeks payment under the Policy under four provisions: the Practice Income provision, the Extra Expense provision, the Civil Authority provision, and the Sue and Labor provision.

The Practice Income provision states:

> [Aspen] will pay for the actual loss of practice income you sustain, or the Valued Daily Limit, as described under Limits of Insurance provision III.E.6., due to the necessary suspension of your practice during the period of restoration. The suspension must be caused by direct physical damage to the building or blanket dental practice personal property at the described premises caused by or resulting from a covered cause of loss or power failure as described under Paragraph I.B.8.
>
> [Aspen] will only pay for loss of practice income that occurs within 12 consecutive months after the date of direct physical damage or power failure as described under Paragraph I.B.8.

- 9 -

>   Practice income coverage shall apply separately to each location affected by such suspension of practice.

P. Am. Compl. Supp. at 52 (bold font omitted).

>  The Extra Expenses provision states:

>   Extra expense means the extra expenses necessarily incurred by you during the period of restoration to continue normal services and operations which are interrupted due to damage by a covered cause of loss to the premises described, or power failure as described under Paragraph I.B.8. You will exercise due diligence and dispatch to restore normal practice services.

>   [Aspen] will only pay for extra expenses that you incur within 12 consecutive months after the date of direct physical damage or power failure as described under Paragraph I.B.8.

*Id.* at 53 (bold font omitted).

>  The Civil Authority provision states:

>   [Aspen] will pay for the actual loss of practice income and rents you sustain caused by action of civil authority that prohibits access to the described premises due to the direct physical damage to property, other than at the described premises, caused by or resulting from any covered cause of loss. This coverage will apply for a period of up to 30 consecutive day from the time of that action.

*Id.* at 56 (bold font omitted).

>  Under the "Sue and Labor" provision,

>   [Dr. Berkseth-Rojas] must see that the following [is] done in the event of damage to covered property: . . . 4. Take all reasonable steps to protect the covered property from further damage by a covered cause of loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs,

- 10 -

>    for consideration in the settlement of the claim. This will not
>    increase the limit of insurance.

*Id.* at 72 (bold font omitted).

D

Under the Practice Income, Extra Expense, and Civil Authority provisions, coverage is only triggered for "direct physical damage or loss." The court therefore begins by addressing whether Dr. Berkseth-Rojas has plausibly pleaded that her property—or, for coverage under the Civil Authority provision, other property—has suffered direct physical damage or loss.

Under Minnesota law, "'it is sufficient to show that the 'insured property is injured in some way, which may be something less than structural damage or some other tangible injury.'" *Seifert*, 2020 WL 6120002, at *3 (quoting *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 2002 WL 31185884, at *3 (D. Minn. 2002), *aff'd,* 356 F.3d 850 (8th Cir. 2004)). For example, there may be direct physical loss or damage when a premises is contaminated or infiltrated by asbestos or smoke. *Id*. (citing examples). But to sufficiently plead direct physical loss or damage, "[a]ctual physical contamination of the insured property is still required." *Id*. (citing *Source Food Tech., Inc*., 465 F.3d at 837-38). It is not enough to allege only that the property has suffered a loss of use or function. *Id.* (citing *Pentair, Inc.*, 400 F.3d at 616). Stated another way, it is legally insufficient for a plaintiff merely to allege that steps taken to address a threat to human health have caused her property to suffer a loss

of use or function, without also plausibly pleading that the insured property has itself been physically contaminated.

In *Seifert* a hair salon owner sued his insurer for denying his claim for lost business income resulting from the closure of his salon due to COVID-19 and the Orders. *Id.* at *1. The owner could not allege that his property was actually contaminated or damaged by COVID-19. *Id.* at *3. The court granted the insurer's motion to dismiss and explained that, unlike cases in which a property was actually contaminated by asbestos or smoke, the owner's inability to provide haircuts and salon services was not due to "actual infiltration and contamination of the properties." *Id.*

Dr. Berkseth-Rojas alleges that she has had to undertake measures to prevent the spread or transmission of COVID-19 and has lost the full functionality of her dental practice in so doing. For example, she asserts that it has been necessary for her to guard against the "spread or presence of COVID-[19]" by installing a plexiglass shield at the reception desk, Am. Compl. ¶ 53, and that she has lost functional space in her office because of the "spread or presence of COVID-19," *id.* at ¶ 54. She alleges that she "was required to drastically reduce operations at her office, and even to close entirely. To do anything else would lead to the emergence or reemergence of COVID-19 at the property." Am. Compl. ¶ 10. But the amended complaint is defective under this court's conclusion above that it is legally insufficient for a plaintiff merely to allege that steps taken to address a threat to human health have caused her property to suffer a loss of use or function, without also plausibly pleading that the insured property has itself been physically contaminated.

- 12 -

Like the salon owner in *Seifert*, Dr. Berkseth-Rojas has failed to sufficiently allege that her property, or any other property, has been actually contaminated or infiltrated by COVID-19, or that her claimed losses are due to infiltration or contamination of property by COVID-19. Rather, she pleads that she was unable to use her property in the way she did before the pandemic due to the Orders and due to steps taken to prevent the "emergence or reemergence" of COVID-19. As the *Seifert* court explained, direct physical loss or damage requires something more than mere loss of use or function. *Seifert*, 2020 WL 6120002, at *3 (citing *Pentair, Inc.*, 400 F.3d at 616). Dr. Berkseth-Rojas has only alleged loss of use and function of her dental practice. She has not asserted that her property has been actually contaminated by COVID-19; therefore, under Minnesota law, she has not sufficiently alleged that she suffered direct physical loss or damage to trigger coverage under the Policy. *See Source Food Tech., Inc.*, 465 F.3d at 837-38.

### E

Nor has Dr. Berkseth-Rojas sufficiently alleged a breach of contract claim based on the "Sue and Labor" provision of the Policy. That provision obligates her to "[t]ake all reasonable steps to protect the covered property from further damage by a covered cause of loss. If feasible, set the damaged property aside and in the best possible order for examination." P. Am. Compl. Supp. at 72 (bold font omitted). Assuming *arguendo* that this provision confers some insurance coverage and is not merely an obligation on Dr. Berkseth-Rojas as the insured, the court holds for the same reasons set out above that she has

not alleged that there is any "further damage" or "damaged property" so as to trigger this provision.

The court therefore grants Aspen's motion to the extent it seeks dismissal of Dr. Berkseth-Rojas' breach of contract claims.

IV

Dr. Berkseth-Rojas's corresponding declaratory judgment claims[7] must also be dismissed.

A

Dr. Berkseth-Rojas seeks declarations that she has suffered insured losses under the Policy as covered by the Practice Income, Civil Authority, Extra Expense, and Sue and Labor provisions and that Aspen is obligated to pay for the full amount of these losses incurred related to COVID-19 and the Orders. These declarations track Dr. Berkseth-Rojas' breach of contract claims. For the same reasons that she has failed to plausibly allege breach of contract claims, she has also failed to plausibly allege declaratory judgment claims.

B

But even had Dr. Berkseth-Rojas alleged plausible declaratory judgment claims, these claims would still be subject to dismissal.

The corresponding declaratory judgments that she seeks overlap with the allegations underlying her contract claims and will be "resolved in the context of [her] breach of contract

---

[7]These claims are alleged in counts V-VIII, based, respectively, on the Practice Income, Civil Authority, Extra Expense, and Sue and Labor provisions.

actions." *Xtria LLC v. Tracking Sys., Inc.*, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (Fitzwater, J.) (citation omitted). Accordingly, her declaratory judgment claims are subject to dismissal as well because they are duplicative of her contract claims. *See Kougl v. Xspedius Mgmt. Co. of Dall./Fort Worth, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (dismissing claims for declaratory relief when they would be resolved in context of breach of contract actions); *Landscape Design & Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573, at *10 (N.D. Tex. Feb.19, 2002) (Fitzwater, J.) (dismissing declaratory judgment action that sought resolution of substantive claims that were already basis of lawsuit).

V

The court grants Dr. Berkseth-Rojas leave to replead.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Because Dr. Berkseth-Rojas has not stated that she cannot, or is unwilling to, cure the defects that the court has identified, the court grants her 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

\* \* \*

For the reasons explained, the court grants Aspen's motion to dismiss and grants Dr. Berkseth-Rojas leave to file a second amended complaint.[8]

**SO ORDERED**.

January 12, 2021.

                                                          _____
                                                          SIDNEY A. FITZWATER
                                                          SENIOR JUDGE

---

[8]Aspen also moves for a protective order staying all discovery pending a decision on Aspen's motion to dismiss. Because the court is today deciding that motion to dismiss, it denies Aspen's motion to stay.