IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHRISTIE JO BERKSETH-ROJAS DDS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> VS. <br><br> ASPEN AMERICAN INSURANCE COMPANY, <br><br> Defendant. | § § § § § § § § § § § § § § Civil Action No. 3:20-CV-0948-D |

MEMORANDUM OPINION
AND ORDER

The court must again decide in this case whether a dentist has plausibly pleaded a breach of contract or declaratory judgment claim based on her insurer's failure to cover COVID-19 virus-based losses under an "all risk" commercial property insurance policy that requires direct physical damage or loss to property. Concluding that she has not, the court grants the insurer's Fed. R. Civ. P. 12(b)(6) motion and dismisses this action with prejudice.[1]

I

Because this case is the subject of a prior opinion, *Berkseth-Rojas DDS v. Aspen American Insurance Co.* (*Berkseth-Rojas I*), ____F.Supp.3d ___, 2021 WL 101479 (N.D. Tex. Jan. 12, 2021) (Fitzwater, J.), the court will recount only the background facts and procedural history that are pertinent to today's decision.

---

[1]Because the court is dismissing this lawsuit, it denies as moot plaintiff's November 23, 2020 and May 6, 2021 motions to schedule class certification briefing.

Plaintiff Christie Jo Berkseth-Rojas DDS ("Dr. Berkseth-Rojas") brings this action against defendant Aspen American Insurance Company ("Aspen") to recover under an "all risk" commercial property insurance policy ("Policy") for losses to her dental practice suffered due to the COVID-19 pandemic.[2] The Policy provided business interruption coverage for certain losses to Dr. Berkseth-Rojas' dental practice occurring during the period December 6, 2019 to December 6, 2020. Dr. Berkseth-Rojas alleges that, due to COVID-19 and related executive orders limiting non-essential services (the "Orders"), she suffered direct physical loss of or damage to her dental practice "because COVID-19 made the property unusable in the way that it had been used before COVID-19." 2d Am. Compl. ¶ 10. She maintains that the Policy provides coverage under four provisions: the Practice Income, Extra Expense, Civil Authority, and Sue and Labor provisions.

In *Berkseth-Rojas I* the court dismissed Dr. Berkseth-Rojas' first amended complaint for failure to plead a plausible breach of contract or declaratory judgment claim. *Berkseth-Rojas I*, ___ F.Supp.3d ___, 2021 WL 101479, at *1. It held that "it is legally insufficient for a plaintiff merely to allege that steps taken to address a threat to human health have caused her property to suffer a loss of use or function, without also plausibly pleading that the insured property has itself been physically contaminated." *Id.* at *5. The court concluded that Dr. Berkseth-Rojas had not plausibly pleaded that her insured property had itself been physically contaminated by COVID-19, or that her claimed losses were due to

---

[2]*I.e.*, "coronavirus" or "SARS-CoV-2."

infiltration or contamination of property by COVID-19, so as to trigger the Practice Income, Extra Expense, and Sue and Labor provisions. *Id.* The court further explained that "direct physical loss or damage requires something more than mere loss of use or function." *Id.* (citing *Seifert v. IMT Ins. Co.*, 495 F.Supp.3d 747, 751 (D. Minn. 2020) (dismissing similar complaint under Minnesota law)). The court also held that Dr. Berkseth-Rojas had not stated a plausible claim for coverage under the Sue and Labor provision because she had failed to allege "damaged property" or "further damage" to covered property, so as to trigger that provision. *Id.* at *5-6. Finally, the court dismissed Dr. Berkseth-Rojas' declaratory judgment claims—which were based on the same four provisions of the Policy—for the same reasons and because they were duplicative of the breach of contract claims. *Id.* at *6. The court also granted Dr. Berkseth-Rojas leave to replead. *Id.*

After Dr. Berkseth-Rojas filed her second amended complaint, Aspen filed the instant Rule 12(b)(6) motion to dismiss, asserting anew that she has failed to state a claim on which relief can be granted. While acknowledging that the second amended complaint contains pages of new allegations, Aspen contends that Dr. Berkseth-Rojas has once more failed to allege that the insured property itself has actually been contaminated, that any contamination actually caused Dr. Berkseth-Rojas' business losses, or that employees who contracted COVID-19 transmitted it to the property.

Aspen maintains that, accepting all of the allegations of the second amended complaint as true, Dr. Berkseth-Rojas has not alleged causation, that is, she has not pleaded that the presence of COVID-19 on the property actually caused her to suspend or reduce

- 3 -

operations, resulting in lost business income; that even if COVID-19 was present on her property, she has not alleged that it caused damage or loss sufficient to trigger coverage, because COVID-19 can be easily cleaned from surfaces and it affects human health, not property; and that she alleges only that the COVID-19 pandemic in general, or the Orders, caused her to suspend or reduce her business operations, resulting in lost business income.

Dr. Berkseth-Rojas opposes Aspen's motion. In her opposition brief and at oral argument, she has highlighted her contention that the motion should be denied based on the law of the case.[3] In sum, Dr. Berkseth-Rojas maintains that, while she does not agree with the court's decision in *Berkseth-Rojas I*, her second amended complaint in fact responds to the ruling and contains the allegations that the court previously found missing.

Regarding Aspen's specific arguments, Dr. Berkseth-Rojas contends that she has adequately pleaded that her property was infected by COVID-19, because the second amended complaint alleges that three employees contracted COVID-19 while working on the property and that her property was altered by COVID-19 particles; that she has adequately pleaded direct physical loss or damage under Minnesota law, because she alleges loss of use and function of her dental practice and that her practice was contaminated by COVID-19; and that she has had to repair her property by installing a plexiglass shield to protect patients and staff, require that patients wait in their cars before being seen, allow only one person in

---

[3]In her opposition to Aspen's motion for leave to submit supplemental authority, *see infra* § III, Dr. Berkseth-Rojas similarly maintains that Aspen "seeks to overturn the law of the case." P. 7-7-21 Resp. & Mem. at 1.

the reception area at a time, and prevent adult patients from being accompanied into the office.

As for causation, Dr. Berkseth-Rojas contends that she has plausibly alleged that the infiltration of COVID-19 on her property and the property of others caused her business losses; that because she "add[s] substantively more factual allegations and offer[s] expert testimony as to how COVID-19 is transmitted and alters property and its air," and "specifically alleges that COVID-19 was absolutely present at her property," "[she] has alleged a causal relationship between COVID-19 and her alleged losses and thus, has plausibly stated a claim for which relief can be granted[,]" P. Resp. at 11-12; and that, even if the business losses were caused by the Orders rather than by the pandemic directly, the requisite causation exists because the Orders were necessitated by the pandemic.

Aspen replies that, because Dr. Berkseth-Rojas has not alleged when her employees contracted COVID-19 or when the property was contaminated by COVID-19, she has not pleaded facts showing that the presence of COVID-19 in her property caused her to suspend or reduce operations and lose business income; and that she has only alleged that COVID-19 generally, or the Orders, caused the reduction or suspension of her operations and lost income.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne,*

*Inc.*, 855 F.Supp.2d 615, 618 (N.D. Tex.2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive Aspen's motion to dismiss under Rule 12(b)(6), Dr. Berkseth-Rojas must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court considers as a threshold matter whether Aspen's motion should be denied based on the law of the case. Dr. Berkseth-Rojas maintains that she has addressed the defects in her first amended complaint that the court identified in *Berkseth-Rojas I* and that, under the law of the case doctrine, the court should decline to dismiss her second amended complaint.

"'[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). In a recent filing, Dr. Berkseth-Rojas argues that the law of the case is that "contamination of property by a deadly substance (such as smoke or asbestos) constitutes direct physical loss of or damage to property[.]" P. 7-7-21 Resp. & Mem. at 2 (citing *Berkseth-Rojas I*, ___ F.Supp.3d ___, 2021 WL 101479, at *5). In her view, she only needs to plead that a "deadly substance" was present on the premises of her dental practice to adequately allege covered property damage.

The court disagrees with Dr. Berkseth-Rojas' description of the law of this case. In *Berkseth-Rojas I* the court acknowledged that there might be instances in which contamination by something like asbestos or smoke *could* cause covered property damage under Minnesota law. *Berkseth-Rojas I*, ___ F.Supp.3d ___, 2021 WL 101479, at *5 (holding that "there *may* be direct physical loss or damage when a premises is contaminated or infiltrated by asbestos or smoke.") (emphasis added). The court did not, as Dr. Berkseth-Rojas posits, hold that *any* contamination by *any* deadly or harmful agent would necessarily constitute property damage under Minnesota law. For reasons the court will explain, COVID-19 is different, and the cases finding covered property damage due to contamination of smoke or asbestos are inapposite. Accordingly, Dr. Berkseth-Rojas' reliance on the law of the case doctrine to avoid dismissal is misplaced.

IV

The court now turns to the question whether Dr. Berkseth-Rojas has stated a claim for relief under the Practice Income, Extra Expense, or Civil Authority provision.

A

The Practice Income provision states:

> [Aspen] will pay for the actual loss of practice income you sustain, or the Valued Daily Limit, as described under Limits of Insurance provision III.E.6., due to the necessary suspension of your practice during the period of restoration. The suspension must be caused by direct physical damage to the building or blanket dental practice personal property at the described premises caused by or resulting from a covered cause of loss or power failure as described under Paragraph I.B.8.

Am. Compl. Supp. at 52 (bold font omitted).

The Extra Expenses provision states:

> Extra expense means the extra expenses necessarily incurred by you during the period of restoration to continue normal services and operations which are interrupted due to damage by a covered cause of loss to the premises described, or power failure as described under Paragraph I.B.8. You will exercise due diligence and dispatch to restore normal practice services.

*Id.* at 53 (bold font omitted).

The Civil Authority provision states:

> [Aspen] will pay for the actual loss of practice income and rents you sustain caused by action of civil authority that prohibits access to the described premises due to the direct physical damage to property, other than at the described premises, caused by or resulting from any covered cause of loss. This coverage will apply for a period of up to 30 consecutive day from the time of that action.

*Id.* at 56 (bold font omitted).

It is undisputed that, to plausibly plead that she is entitled to coverage under any of these Policy provisions, Dr. Berkseth-Rojas must adequately allege that her property suffered direct physical loss or damage. Therefore, even assuming *arguendo* that Dr. Berkseth-Rojas has sufficiently pleaded that COVID-19 was present at some point in her dental office, she must still adequately allege that the presence of COVID-19 constitutes direct physical loss or damage.

B

Dr. Berkseth-Rojas maintains that the presence of COVID-19 in her dental practice—what she refers to as "contamination"—constitutes an injury to her property. The second amended complaint alleges:

> 8. At least three members of Rojas Family Dental staff have contracted COVID-19 while working on covered property. It is thus an absolute certainty that covered property has been infiltrated and contaminated by COVID-19 by those three persons-and likely numerous others. The virus was there. The virus was harmful. Its adhesion to the air in the property and property altered the property and made it harmful. Plaintiff thus has been forced to suspend or reduce[] her practice due to COVID-19 and the resultant Executive Orders issued by the Governor of Minnesota that non-emergency or elective dental care that requires Personal Protective Equipment ("PPE") be postponed indefinitely (the "Executive Orders"), as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

2d Am. Compl. ¶ 8.

Dr. Berkseth-Rojas posits that this injury to her property—i.e., the presence of

COVID19—has caused her to make certain repairs. The second amended complaint alleges:

> 84. Because of the spread or presence of COVID-19, the air in Plaintiff's property has become unsafe, necessitating repairs such as the installation of a sneeze-guard plexiglass shield at the reception to protect patients and staff. Plaintiff's property thus has been and continues to be contaminated.
>
> 85. In addition, the functional space in the building has been diminished by the spread or presence of COVID-19. For example, the dental office lost its functionality as a space for elective dental care and was even required to close entirely, and the waiting room and reception area have lost their normal functionality and their space has been diminished. Plaintiff has instituted measures to repair the physical loss or damage such as requiring patients to wait in their cars until called or texted by staff, allowing only one person in the reception area at a time, and preventing adult patients from being accompanied.

*Id.* at ¶¶ 84-85.

To state a plausible claim for breach of the Policy, Dr. Berkseth-Rojas must adequately allege that her property has been "'injured in some way, which may be something less than structural damage or some other tangible injury.'" *Berkseth-Rojas I*, ___ F.Supp.3d ___, 2021 WL 101479, at *5 (quoting *Seifert*, 495 F.Supp.3d at 751). Dr. Berkseth-Rojas maintains that the presence of COVID-19 by itself is sufficient to constitute a tangible injury that triggers coverage under the Policy.

Although the court observed in *Berkseth-Rojas I* that "there may be direct physical loss or damage when a premises is contaminated or infiltrated by asbestos or smoke," *Berkseth-Rojas I*, ___ F.Supp.3d ___, 2021 WL 101479, at *5 (citing *Seifert,* 495 F.Supp.3d at 751 (citing examples)), Dr. Berkseth-Rojas has not plausibly pleaded that her insured

property suffered an injury due to the mere presence of COVID-19. It is true that, in certain circumstances, contamination by smoke or asbestos can constitute a covered injury to property. *See, e.g., Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co.*, 98 N.W.2d 280, 290 (Minn. 1959) (holding that fire insurance policy that covered "all loss or damage by fire" covered smoke damage to perishable inventory); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997). But these cases concern different facts and do not broadly hold that the presence of any potentially harmful particles, like COVID-19, inside or on a property necessarily causes "injury" to the property under the terms of a policy.

*Marshall Produce Co.*, for example, involved a fire insurance policy, not an all-risk business interruption policy like the Policy at issue here. *See Marshall Produce Co.*, 98 N.W.2d at 285. The court considered the question whether a fire insurance policy that covered "all loss or damage by fire" covered damage to perishable inventory by smoke from a nearby fire, but not damage from a fire itself. *Id.* It concluded that "all loss or damage by fire" included smoke damage to perishable inventory and loss of inventory that was unusable due to potential smoke exposure. *Id.* at 290. The instant case is different: the Policy does not cover "all loss or damage," but rather direct physical damage or loss, and the second amended complaint does not allege any physical damage other than the mere presence of COVID-19.

As many courts have held, cases concerning damage due to asbestos, smoke, or other airborne perils do not inform the analysis of the effect of COVID-19 because they do not

- 11 -

concern the presence of a virus like COVID-19, which can be cleaned and disinfected from surfaces. *See, e.g., Bachman's, Inc. v. Florists' Mut. Ins. Co.*, ___ F.Supp.3d ___, 2021 WL 981246, at *4 (D. Minn. Mar. 16, 2021) (dismissing complaint under Minnesota law, considering cases finding damage due to smoke and asbestos inapposite because "there can be no dispute that the virus can be easily eliminated with routine cleaning procedures"); *Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, ___ F.Supp.3d ___, 2021 WL 1056627, at *5 & n.1 (N.D. Cal. Mar. 19, 2021) (listing cases and explaining that asbestos is different from COVID-19, because asbestos can be "physically incorporated into the building and therefore physically affect tangible property," whereas COVID-19 "can be disinfected and cleaned"); *Dino Drop, Inc. v. Cincinnati Ins. Co.*, 2021 WL 2529817, at *5-6 (E.D. Mich. June 21, 2021) (citing cases and explaining that "the mere presence of the virus on the physical structure of the premises does not amount to direct physical loss as coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property," and "the virus may be eliminated simply by cleaning and disinfecting surfaces").

The second amended complaint acknowledges that COVID-19 can be cleaned and removed from surfaces, *e.g.*, 2d Am. Compl.¶¶ 9, 53, and it essentially alleges that Dr. Berkseth-Rojas' dental practice has suffered damage only in the form of remedial measures taken to reduce or prevent the spread of COVID-19 among humans, *e.g.*, *id.* at ¶¶ 53, 84, 85. For example, the second amended complaint pleads that COVID-19 causes "physical loss and damage by necessitating remedial measures that include without limitation extensive cleaning and disinfecting, repairing or replacing air filtration systems, remodeling and

reconfiguring physical spaces, and other measures to reduce or eliminate the presence of cases of COVID-19 and the coronavirus on-site." *Id.* at ¶ 53.

Similarly, Dr. Berkseth-Rojas alleges that, to "repair the physical loss or damage" due to COVID-19, the dental practice "require[ed] patients to wait in their cars until called or texted by staff, allow[ed] only one person in the reception area at a time, and prevent[ed] adult patients from being accompanied." *Id.* at ¶ 85. Put simply, Dr. Berkseth-Rojas does not plead that her insured property suffered direct physical damage or loss due to COVID-19; she alleges, instead, that she was forced to reduce her patient capacity and institute remedial measures to prevent the spread of COVID-19 among humans. As numerous courts nationwide have held, "COVID-19 does not cause physical damage to property; it causes people to get sick." *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, ___ F.Supp.3d ___, 2021 WL 1232778, at *5 (S.D. Tex. Mar. 12, 2021) (Rosenthal, C.J.) (citing cases and dismissing complaint with leave to replead).[4] The court therefore concludes that Dr. Berkseth-Rojas has not plausibly pleaded that COVID-19 caused direct physical damage or loss to her insured property. As a result, she has not pleaded a plausible claim for breach of contract based on the Practice Income, Extra Expense, or Civil Authority provision.

---

[4]Dr. Berkseth-Rojas acknowledges in her recent filing that what makes COVID-19 different from another virus, like the flu, is that COVID-19 "leads to grievous injury or death." P. 7-7-21 Resp. & Mem. at 5. In other words, COVID-19 does not cause property damage that the flu does not cause; COVID-19 is simply more dangerous to human health.

V

The court now considers the Sue and Labor provision, which states:

> [Dr. Berkseth-Rojas] must see that the following [is] done in the event of damage to covered property: . . . 4. Take all reasonable steps to protect the covered property from further damage by a covered cause of loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the limit of insurance.

Am. Compl. Supp. at 72 (bold font omitted).

Aspen contends that Dr. Berkseth-Rojas has not pleaded that COVID-19 caused "further damage" or "damaged property" and that this is a mitigation provision, not a coverage provision. Dr. Berkseth-Rojas maintains that her insured property has suffered damage because of the presence of COVID-19, but she does not explain how the Sue and Labor provision provides coverage for any loss.

The court holds that Dr. Berkseth-Rojas has failed to plead a plausible claim for breach of the Sue and Labor provision. As Aspen points out, this provision is best characterized as an obligation on Dr. Berkseth-Rojas, not on Aspen. The heading of the section in which the Sue and Labor provision appears is entitled "Duties in the Event of Damage," and it imposes other obligations on Dr. Berkseth-Rojas, such as to "[n]otify the police if a law may have been broken" and "[c]ooperate with us in the investigation or settlement of the claim." As one court has noted, this type of provision is "plainly not a coverage provision." *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F.Supp.3d

1191, 1206 (D. Kan. 2020).

The court therefore grants Aspen's motion to dismiss to the extent it seeks dismissal of Dr. Berkseth-Rojas' breach of contract claims.

VI

The court also dismisses Dr. Berkseth-Rojas' corresponding declaratory judgment claims.[5]

A

Dr. Berkseth-Rojas seeks declarations that she has suffered insured losses under the Policy as covered by the Practice Income, Civil Authority, Extra Expense, and Sue and Labor provisions and that Aspen is obligated to pay for the full amount of these losses incurred due to COVID-19 and the Orders. These declarations track Dr. Berkseth-Rojas' breach of contract claims. For the same reasons that the court holds that she has failed to plead plausible breach of contract claims, the court concludes that she has failed to plead plausible declaratory judgment claims.

B

But even had Dr. Berkseth-Rojas alleged plausible declaratory judgment claims, the claims would still be subject to dismissal.

The corresponding declaratory judgments that she seeks overlap with the allegations underlying her contract claims and will be "resolved in the context of [her] breach of contract

---

[5]These claims are alleged in counts V-VIII, based, respectively, on the Practice Income, Civil Authority, Extra Expense, and Sue and Labor provisions.

actions." *Xtria LLC v. Tracking Sys., Inc.*, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (Fitzwater, J.) (citation omitted). Accordingly, her declaratory judgment claims are subject to dismissal as well because they are duplicative of her contract claims. *See Kougl v. Xspedius Mgmt. Co. of Dall./Fort Worth, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (dismissing claims for declaratory relief when they would be resolved in context of breach of contract actions); *Landscape Design & Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573, at *10 (N.D. Tex. Feb.19, 2002) (Fitzwater, J.) (dismissing declaratory judgment action that sought resolution of substantive claims that were already basis of lawsuit).

\* \* \*

Accordingly, for the reasons explained, the court grants Aspen's motion to dismiss and dismisses this action with prejudice by judgment filed today.[6]

**SO ORDERED**.

July 13, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[6]Aspen filed on July 2, 2021 a motion for leave to submit supplemental authority, which Dr. Berkseth-Rojas opposes. Because in her opposition response Dr. Berkseth-Rojas has addressed on the merits the supplemental authority on which Aspen relies, the court grants Aspen's motion.

- 16 -